Marshall E. Livingston, J.
This is a motion by the petitioner, Rochester Independent Workers, Local No. 1 (Union), to compel the respondent, General Dynamics/Electronics Division (Company), to arbitrate a grievance concerning “ the reduction in force and lay off which is in effect as of April 14, 1967, and the transfer and assignment of work out of the RIW Bargaining *471 Unit which is contributory to this lay off and/or its continuation ”.
The facts giving rise to the controversy are substantially undisputed. General Dynamics Corporation is comprised of ten separate divisions of which the electronics division is one. The company has three separate operations in the electronics division. One is located in Rochester, New York, another in Orlando, Florida, and the one whose subcontracting work gave rise to this grievance is located in San Diego, California.
The affidavit of Fred L. Gagnon, vice-president of manufacturing for the electronics division of General Dynamics, sets forth the background of this dispute. The Fort Worth, Texas, division of General Dynamics has had for some time a substantial contract with the United States Department of Defense for the delivery of F-lll aircraft and various associated items of support equipment, among which are substantial quantities of “ test stations ” that include combinations of “ test replaceable units ” (TRUs). The TRUs have always been assembled in Rochester, New York, at respondent’s plant.
In early November, 1966, the company decided that in order to meet the required delivery dates for the test stations, it would be necessary for the Rochester operation to subcontract to the San Diego operation the final assembly of 300 TRUs. Thereupon in December, 1966, San Diego personnel were brought in to assist in assembling material and parts into the 300 kits for shipment to San Diego.
In March, 1967, Mr. Gagnon avers, the Fort Worth Division “ experienced a stretch out * * * and as a result * * * delivery dates * * * of the test stations were extended for * * * three or four months ”. Thereafter, on April 14, 1967, about 100 employees were laid off in Rochester, and the grievance which the union seeks to arbitrate was filed.
The union claims article I (Recognition) and article II (Management Rights) of the five-year agreement between the parties, which is effective from March 20, 1965, through March 19, 1970, were ‘ ‘ violated ’ ’ by the company.
The company in article I (Recognition) of the agreement between it and the union ‘ ‘ recognizes the Union as the exclusive representative for purposes of collective bargaining with respect to hours of work, rates of pay, and other conditions of employment covered by this Agreement ” for all its employees.
Article II (Management Rights) of the agreement, with which we are particularly concerned on this motion, states: ‘ ‘ The parties agree that the management of the Company and the direction of the working forces are solely and exclusively the functions *472 and prerogatives of the management of the Company. All the rights, functions, and prerogatives of management and the exercise thereof, which are not expressly modified by one or more specific provisions of this Agreement, are reserved and retained exclusively by and to the Company and are not subject to the Grievance Procedure, arbitration or negotiation.
‘ ‘ By way of illustration but not by way of limitation of the Company’s rights, functions, and prerogatives as stated above, the Company specifically reserves the right to hire, suspend, promote or demote, discipline or discharge, classify or transfer, and relieve employees from duty, subcontract work, transfer and/or assign work, determine the place work will be performed, determine the number and location of its plants and extend, limit, or curtail its operations or any part thereof.”
Article XIV of the agreement sets forth the “ Grievance ' Procedure ” in five steps. Step V has to do with arbitration. The jurisdiction of the arbitrator is fixed in subdivision (d) thereof as follows: ‘ ‘ The jurisdiction of the arbitrator shall be limited to the adjudication of grievances, and he shall have no power to arbitrate away in whole or in part, or to add to or subtract from or modify any of the express provisions of this Agreement. The arbitrator shall confine his decision solely to the issue(s) submitted to him by the parties, and his decision shall be final and binding on both the Company and the Union and the employees represented by the Union. A grievance relating to discharge or other disciplinary action may be heard by the arbitrator solely to determine the guilt or innocence of the employee, but he may not rule on the merit of the Company Rule nor the penalty applied for the infraction thereof, unless he shall find that management’s decision was arbitrary or capricious. In the event a dispute shall arise as to whether an issue is arbitrable under the terms of this Agreement, such a dispute shall not be subject to arbitration but shall be settled by the ' courts. ’ ’
Article XXII (Complete Agreement) provides as follows:
“ It is the intent of the parties hereto that the provisions of this Agreement, which supersede all prior agreements and understandings, oral or written, expressed or implied, between such parties, shall govern their entire relationship and shall be the sole source of any and all rights or claims which may be asserted in arbitration hereunder or otherwise.
‘ ‘ Therefore, each party agrees that, for the life of this Agreement, the other shall not be obligated to bargain, negotiate, consult or notify with respect to Management Rights (Article II, Management Rights) or to any matters pertaining to rates of *473 pay, wages, hours or other terms or conditions of employment, whether or not covered by this Agreement or in negotiations leading hereto, except as notification or consultation is explicitly required by the provisions of this Agreement.
“ Additionally, no abrogation or modification of the provisions of this Agreement is granted by implication, past practice, or action of either party during the life of this Agreement, unless such abrogation or modification is mutually agreed to, reduced to writing, and signed by representatives of the parties.”
The question to be decided against this background of facts as prescribed by the applicable terms of the agreement between the union and the company is whether the grievance against subcontracting is arbitrable. I hold that it is not, for the reasons hereinafter expressed.
Because of the interstate character of the company’s business, the Federal court decisions are controlling here (Teamsters Local v. Lucas Flour Co., 369 U. S. 95; Matter of Long Is. Lbr. Co. [Martin], 15 N Y 2d 380).
The union contends that article II (Management Rights) and specifically that portion which “ reserves the right to * * * sub-contract work, transfer and/or assign work, determine the place work will be performed ” (italics supplied) is subject to the grievance procedure, despite the language herein quoted. I do not so view it.
Article II is clear when it says, “ All the rights, functions, and prerogatives of management and the exercise thereof, which are not expressly modified by one or more specific provisions of this Agreement, are reserved * * * to the Company and are not subject to the Grievance Procedure, arbitration or negotiation ” (italics supplied). The subsequent modification in the agreement whereby some prerogatives of management may be arbitrated does not affect those prerogatives which are specifically excluded from arbitration.
The union says that some of these prerogatives of management are “ expressly modified” in certain respects and are thereby included in the grievance procedure, despite the exclusionary language of article II. Petitioner argues that articles IV, V, X, and XVI of the agreement set forth several of these areas. However, the right to 11 sub-contract work, transfer and/or assign work ”, and the right to “ determine the place work will be performed ” (italics supplied) are reserved to the exclusive control of management and are, by article II, specifically excluded from arbitration.
The company urges consideration of the bargaining history as supportive of its position negating arbitration in matters *474 involving subcontracting. work. The first six pages of the affidavit of Dean E. Hyman, submitted on the motion, pertain to this. Nevertheless, I did not find it necessary to look to or consider the bargaining history in order to spell out the intent of the parties to this agreement.
It should perhaps be noted that Matter of Fitzgerald (Gen. Elec. Co.) (19 N Y 2d 325) holds such history should not be considered and points out, indeed, that the Federal courts are at odds with the relevancy of such evidence. The rationale of the court in Fitzgerald in effect applies the parol evidence rule, as expressed by Richardson, Evidence (9th ed., § 578) ; McCormick, Evidence (1954 ed., § 210 et seq.); and American Law Institute Restatement, Contracts (§§ 228, 229, 237-244). But also cf. Independent Soap Workers v. Procter & Gamble Mfg. Co. (314 F. 2d 38 [9th Cir.]); Pacific Northioest Bell Tel. Co. v. Communications Workers (310 F. 2d 244 [9th Cir.]), which conclude that the parol evidence rulé does not apply to preclude examination of the bargaining-history upon the question of the arbitrability of the dispute.
Mr. Justice Douglas of-the United States Supreme Court in the case of Steelworkers v. American Mfg. Co. (363 U. S. 564, 567-568) said: “ The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is then confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract.” (Italics supplied.)
The “ function of the court ” thus spelled out would seem to apply even more explicitly when, as here, the parties exclusively reserved and excepted from the arbitration process certain designated functions and prerogatives of management, which were not expressly modified in other provisions of the agreement.
In the Steelworkers trilogy, so called, (Steelworkers v. American Mfg. Co., 363 U. S. 564; Steelworkers v. Warrior & Gulf Co., 363 U. S. 574; Steelworkers v. Enterprise Corp., 363 U. S. 593), the case with a significant holding, because of the contract here, is Steelworkers v. Warrior £ Gulf Co. (supra, pp. 584— 585). In that case arbitration was directed because there was no: “ showing that the parties designed the phrase ‘ strictly a function of management ’ to encompass any and all forms of contracting out. In the absence of any express provision exclud: ing a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause.is vague and the arbitration clause quite broad”.
*475 The exclusionary clause in Steelworkers v. Warrior & Gulf Co. (supra, p. 576) provided that “ matters which are strictly a function of management shall not be subject to arbitration under this section”. The work which was subcontracted consisted of maintenance and repair work on barges used by Warrior. The District Court held “ the contracting out of repair and'maintenance work, as well as construction work, is strictly a function of management not limited in any respect by the labor agreement involved here ” (see Steehvorkers v. Warrior & Gulf Co., (168 F. Supp. 702, 705). In reversing, the Supreme Court held (p. 584), in substance, that in the absence of a provision in the agreement specifically excluding subcontracting, and because there was no showing that the phrase 1 ‘ strictly a function of management ’ ’ encompassed subcontracting, therefore, the dispute must be arbitrated.
Guidelines for such exclusionary agreements were suggested by the Supreme Court in Steelworkers v. Warrior & Gulf Co. (363 U. S. 574, 584, supra) as follows: “ A specific collective bargaining agreement may exclude contracting out from the grievance procedure. Or a written collateral agreement may make clear that contracting out was not a matter for arbitration. In such a ease a grievance based solely on contracting out would not be arbitrable.”
Article II of the agreement between the company and the union, in my opinion, follows these guidelines with specificity and is very similar in this respect to the agreement in Boeing Co. v. International Union, United Automobile etc. Workers (234 F. Supp. 404 [E. D., Pa. 1964]). The District Court there held (p. 407): “On the undisputed facts in this record it cannot be held that the Company has bound itself to arbitrate this dispute over the location of production work ”.
In the Boeing case (supra), the company had five principal manufacturing locations-. The company claimed that under the terms of the labor agreement with the union (p. 405), “ it was not obligated to arbitrate a dispute arising out of the employer’s decision to locate certain plastic production work at its plant in Wichita, Kansas, rather than at its plant in Morton, Pennsylvania”. The agreement provided (p. 405) ‘ ‘ that under and included within the meaning of the ‘ Management Prerogatives ’ Article of that Agreement, the Company has the right to subcontract and designate the work to be performed by the Company and the places where it is to be performed, which right shall not be subject to arbitration ”.
The United States Supreme Court in Atkinson v. Sinclair Refining Co. (370 U. S. 238, 241) further said on this subject.- *476 ‘ ‘ Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties. ‘ The Congress * * * has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration' is. a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. ’ United Steelworkers v. Warrior & Gulf Nav. Co., 363 U. S. 574, 582. See, also, United Steelworkers v. American Mfg. Co., 363 U. S. 564, 570-571 (concurring opinion).”
It is clear in this case that 'the agreement is not susceptible to a construction whereby the company was bound to arbitrate the subcontracting of a part of its work or the effect thereof with the union.
The main thrust of this motion is to compel arbitration because the company subcontracted work, and ‘ ‘ the work that was theirs [the employees] had been sent to another plant in the General Dynamics network ’ ’.
The union. contends that inasmuch as the subcontracting resulted in a “lay-off” and was in effect an “improper discharge ”, it thereby comes under the grievance procedure by virtue of the language of subdivision (c) of section 2 of article XIV (Grievance Procedure). I do not so interpret it.
The contention that the by-products of subcontracting, to wit: lay off and improper discharge, require the primary issue of subcontracting to be arbitrated is untenable. I hold the contract meant what it plainly said: the right to subcontract is specifically reserved to the company and is not arbitrable.