**Michael D. CAPPA, Plaintiff,**

v.

**Phillip WISEMAN, Individually and d/b/a Denticator, Denticator Co., Inc., a corporation, and Warehouse Union Local 860, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Defendants.**

**No. C–76–624 WHO.**

United States District Court,
N. D. California.

Feb. 21, 1979.

Francis J. McTernan, San Francisco, Cal., for plaintiff.

Louis N. Haas, Haas & Najarian, San Francisco, Cal., for Wiseman & Denticator.

Duane B. Beeson, Brundage, Beeson, Tayer & Kovach, San Francisco, Cal., for Union.

OPINION

ORRICK, District Judge.

Whether an employer and a union, in applying the terms of an industry-wide collective bargaining agreement to the employer's workplace, may orally agree to limit the scope of the bargaining unit to which the agreement shall apply is the question presented by defendants' motion for summary judgment. For the reasons hereinafter stated, the Court concludes that such an agreement is proper, and finding, based upon the pleadings, depositions and affidavits, that there exists no genuine issue as to any material fact, grants defendants' motion.

Defendant Warehouse Union Local 860, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers ("the Union") is a labor union representing warehouse employees in the San Francisco Bay Area. For many years, the Union has negotiated and executed, with the San Francisco Employers' Council and the Industrial Employers and Distributors Association, a "Master Warehouse Agreement" ("the Agreement") establishing terms and conditions of employment for all warehouse employees of member employers. At all times pertinent to this litigation, such agreements were in effect.[1]

Defendant Phillip Wiseman, doing business as Denticator and Denticator Co., Inc. ("Denticator"), manufactures and distributes dental supplies. As part of its operation, Denticator maintains a warehouse for shipping and receiving purposes, but has never been a member of either of the employers' associations involved in negotiating the Agreement. In 1957, representatives of the Union first approached Wiseman to discuss organizing Denticator. Wiseman indicated that his small warehouse operation employed only one individual performing shipping and receiving work on a regular basis. Wiseman and the Union then agreed that Denticator would recognize the Union and execute the Agreement, but that the Agreement would apply only to the single shipping and receiving clerk employed by Denticator.[2]

The understanding reached between the Union and Denticator to restrict the scope of the bargaining unit was never committed to writing. However, the affidavits and exhibits establish that these parties have entered into successive Agreements since 1957 and, consistent with their initial understanding, have applied the terms thereof to a single employee. Between March 6, 1957, and January, 1976, that employee was Harold Flint, who remained Denticator's principal shipping and receiving clerk throughout that period. Upon Mr. Flint's retirement in 1976, the contract was applied exclusively to Karim Salih, Flint's successor. Because the Agreement required union membership, both Flint and Salih were members of the Union during the period in which each was covered by the Agreement. No other employee of Denticator was a Union member during these periods.

Plaintiff, Michael D. Cappa, was hired by Denticator in August, 1972, to perform warehouse duties under the supervision of

1. During plaintiff's tenure as an employee of defendant Denticator, two successive Agreements were in effect, one covering the period from June 1, 1970, to May 31, 1973, and a second extending from June 1, 1973, to May 31, 1976.

2. The nature of Denticator's contractual relationship with the Union is not atypical. The Union negotiates the Agreement with two large employers' organizations representing some 68 employers. Subsequent to the execution of the Agreement, the Union negotiates with nearly 150 "independents" which do not belong to either employer group. These independent employers are each required to sign the Agreement; however, because circumstances affecting each one may vary significantly, it is not uncommon for the Union to enter into supplementary, oral understandings which limit the application of the Agreement in one or more respects.

Flint. The parties have stipulated that plaintiff's employment duties were covered by job classifications contained in the Agreement.[3] However, plaintiff did not receive the wages and benefits provided for in the Agreement, but was compensated at a lower rate.[4] At no time during his tenure at Denticator did plaintiff seek to join the Union, nor did the Union solicit his membership. In March, 1975, plaintiff was discharged from Denticator. On the advice of Flint, he then visited the union hall to inquire about filing a grievance. There he spoke with a business agent of the Union who indicated that the Union could not help him since he was not a member.

Plaintiff then commenced this action under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), alleging that defendant Denticator breached its collective bargaining agreement by failing to compensate plaintiff at the rates provided therein.[5] In essence, plaintiff's position is that his employment duties were covered by the unambiguous terms of the Agreement, but that nevertheless he was compensated at a lower rate and, therefore, is entitled to recover the difference. Defendants, of course, proffer evidence of their oral understanding and the consistent application of the Agreement to Denticator's workplace over a period of 20 years to support the proposition that plaintiff was not covered by the Agreement, and had no rights thereunder.

The case thus turns upon the disposition of two issues: (1) whether or not the parol evidence rule, as applied to this Agreement, permits the consideration of extrinsic evidence to vary the terms of the written contract, and (2) whether or not there exists any element of substantive national labor policy which forbids the parties from entering into the kind of oral agreement in evidence here. These questions shall be discussed *seriatim.*

## I.

■ Where an integrated, written agreement is clear and unambiguous on its face, the parol evidence rule precludes the consideration of extrinsic evidence as to the parties' intent or individual interpretations of the contract terms. Witkin, California Evidence § 714 (2d ed. 1966). This rule applies to the interpretation of collective bargaining agreements as well as to commercial contracts. *Manning v. Wiscombe,* 498 F.2d 1311, 1313 (10th Cir. 1974); *Lewis v. Owens,* 338 F.2d 740 (6th Cir. 1964). It is equally true, however, that where the language of a collective bargaining agreement is ambiguous, parol evidence concerning the parties' intent and application of the agreement is properly allowed. *Pacific Northwest Bell Telephone Co. v. Communications Workers of America,* 310 F.2d 244 (9th Cir. 1962); *Post Houses, Inc.,* 173 N.L.R.B. 1320 (1968). Indeed, this Circuit has recognized the great difficulty of limiting collective bargaining agreements to their express terms. *Pacific Northwest Bell Telephone Co. v. Communications Workers, supra,* 310 F.2d at 246 ("[C]ollective bargaining contracts by their very nature cannot fairly be limited to their express provisions").

■ Restricting the interpretation of a collective bargaining agreement to its express terms is extremely unrealistic in circumstances where, as here, the parties have

---

**3.** Defendant Denticator appears now to dispute the existence and/or scope of any such stipulation. However, for the purposes of adjudicating this motion for summary judgment, the Court has assumed, as it must, that plaintiff could establish these facts at trial.

**4.** Plaintiff alleges a difference of $12,700 between the wages he was paid and those due under the contract. In addition, he claims entitlement to pension fund and health and welfare fund contributions which were concededly *not* made by defendant Denticator.

**5.** Plaintiff does not contend that his *discharge* violated the collective bargaining agreement. However, he does charge the Union with a breach of its duty of fair representation for having failed to process his grievance. *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In light of the Court's disposition of plaintiff's contract claim, it is unnecessary to reach this second contention.

not actually negotiated the agreement themselves, but have attempted to adapt the terms of an industry-wide agreement to conditions in the workplace of a relatively unique (at least from a warehouse standpoint), independent employer. Given the often broad, general terms of a master agreement, its application to small, independent employers must of necessity be accompanied by a series of adjustments and alterations. To exclude these often informal understandings from consideration would severely handicap courts in their attempt to ascertain the real content of individual agreements. Courts have therefore refused to impose upon themselves this handicap. *NLRB v. Scientific Nutrition Corp.*, 180 F.2d 447 (9th Cir. 1950); *Lewis v. Lowry*, 295 F.2d 197 (4th Cir. 1961), *cert. denied*, 368 U.S. 977, 82 S.Ct. 478, 7 L.Ed.2d 438 (1962). In *NLRB v. Scientific Nutrition Corp.*, for example, defendant an independent employer, signed a master collective bargaining agreement which, by its terms, did not provide for a closed shop. However, because the parties to the agreement had always administered it so as to provide for a closed shop, defendant discharged employees who refused to join the union. In subsequent unfair labor practice proceedings, the National Labor Relations Board ("the Board") excluded evidence as to the historical application of the agreement. The Ninth Circuit, recognizing the practice of supplementing the master agreement by additional terms, and noting the employer's relatively small size, reversed the Board, and considered parol evidence as to the mutual understandings reached outside the terms of the written contract. *Id.* at 449.

■ In light of these principles, and because the Agreement is far from being an unambiguous instrument, the terms of which are sufficient unto themselves, it is appropriate to consider parol evidence to determine the parties' intent and interpretation of the contract terms. Furthermore, the Agreement itself expressly recognizes the existence of supplementary agreements. Section 16 provides in pertinent part:

"This Master Agreement shall supersede all existing agreements between the Union and members of the Council, parties to this Master Agreement; provided, however, that special conditions of employment peculiar to certain Employers provided for in existing agreements supplementary to this Master Agreement shall be continued in force." Plaintiff's Exhibit 1.

Moreover, the recognition clause of the Agreement states:

"(a) Union Recognition. The Union is recognized as the sole collective bargaining agency for the employees employed in the classifications set forth in this Master Agreement and in agreements supplementary hereto in force and effect on the date of this Master Agreement." § 1(a), Plaintiff's Exhibit 1.

Finally, as a preface to the enumeration of job descriptions covered by the contract, the contract provides:

"(b) Job Descriptions: Although both parties recognize that particular characteristics of certain firms must be recognized * * *." Addendum "A," § 6(b), Plaintiff's Exhibit 1.

These contract provisions dispel the notion that the Agreement is on its face so unambiguous that extrinsic evidence is unnecessary. To the contrary, they fully conform to the observation that industry-wide agreements of this nature are of necessity flexible and amenable to differing applications in different workplaces.

## II.

Nothing in the national labor policy appears to condemn either the form or the substance of the Agreement arrived at between the Union and Denticator. First, the Board has long held that "it will not disturb an established bargaining relationship unless required to do so by the dictates of the Act or other compelling circumstances." *Great Atlantic & Pacific Tea Co.*, 153 N.L.R.B. 1549, 1550 (1965); *Fraser & Johnson Co.*, 189 N.L.R.B. 142, 151 n.50 (1971). Moreover, parties to a collective bargaining agreement have always had the right to

stipulate to the appropriate bargaining unit. *Shell Oil Co.*, 194 N.L.R.B. 988, 995 (1972); *Stox Restaurant*, 172 N.L.R.B. 1474 (1968). Such stipulations, particularly when entered into to facilitate representation proceedings, are rarely disturbed by the Board.[6] *Cromwell Printery, Inc.*, 172 N.L.R.B. 1817, 1832 (1968); *General Electric Co.*, 170 N.L.R.B. 1277 (1968).

There is thus nothing improper about the substance of the parties' agreement here. The affidavits establish that Denticator, when first approached about signing the Agreement, indicated that it employed only a single warehouse employee on a regular basis, and that its competitive position made it impossible to pay temporary help at union scale. The Union representative, apparently crediting these factors, and recognizing the impracticality of requiring temporary employees to join the Union, agreed to limit the scope of the bargaining unit to a single job position. Under the principles stated above, such a voluntary agreement as to the size of the unit was entirely appropriate.

This much plaintiff does not challenge, conceding that "the parties to a collective bargaining arrangement may by agreement define the scope of the bargaining unit." Plaintiff argues, rather, that the parties did define the scope of the unit in the written contract, and that any subsequent oral "side agreement" is ineffective to alter it. Characterizing the transaction as an oral *modification* of an existing agreement, plaintiff contends that oral waivers of vested rights by union officials are ineffective to modify the terms of a written collective bargaining agreement. *Manning v. Wiscombe, supra; Lerwill v. Inflight Services, Inc.*, 379 F.Supp. 690 (N.D.Cal.1974).

An examination of the cases upon which plaintiff relies to support this proposition shows them to be inapposite here. In *Lerwill*, the plaintiff was an employee clearly within the scope of the bargaining unit covered by the agreement. He brought suit to enforce the terms of the written collective bargaining agreement, which expressly provided for overtime wages. Representatives of the union, without the knowledge or consent of the membership, acquiesced in the employer's practice of paying straight wages for overtime work. Relying upon the principle that represented employees have a right to notice of contract modifications, the court enforced the terms of the written agreement:

"Congress has placed at the core of our national labor policy the principle that employers and unions negotiate collective bargaining agreements and perform consistently with them. Recognizing that strict adherence to this principle may at times impose hardships upon labor or management, Congress has sought to provide for these situations while preserving the basic principle by providing for modification of collective bargaining agreements before their natural terminations so long as orderly procedures involving notice and negotiation are followed. 29 U.S.C. § 158(d). Tolerating modifications through informal agreement or unspoken acquiescence, as appears to have been done in the present case, creates the danger of substituting for collective bargaining a system of subtle suggestions, coercion or intimidation. This is not what Congress has mandated, and this Court may not formulate and apply a rule which would so interpret the National Labor Relations Act." *Id.* at 692.

In *Manning*, the written agreement required the employer to make contributions to a retirement fund on behalf of all his employees. However, because the contract was administered on a "members-only" basis, contributions were made on behalf of union members only. The court, relying upon a modification theory, refused to honor the informal agreement:

"The trustee here stands as a third-party beneficiary of the collective bargaining agreement and his rights vested upon the

---

**6.** Of course, the Board has the authority to determine whether or not any particular bargaining unit is "appropriate." 29 U.S.C. § 159(b). However, that issue is not presently before the Court.

signing of the contract and the creation of the trust fund. The primary parties cannot modify by subsequent conduct the express terms of an agreement without the consent of a third-party beneficiary whose rights have vested." *Manning v. Wiscombe, supra,* 498 F.2d at 1313.

These cases do not control the outcome here. The transaction presented in this instance cannot properly be characterized as an oral "modification" or "waiver" of vested rights. None of Denticator's employees had any rights under a collective bargaining agreement until such an agreement had been negotiated and executed. The voluntary limits placed upon the scope of the bargaining unit were part and parcel of the original contract negotiations, and have been consistently observed for a period of 20 years. Hence, there existed no vested rights of Denticator employees (other than Harold Flint or his successor)—reflected in a written agreement or otherwise—which were subsequently waived or modified. The important policy of requiring membership approval of alterations or additions to a collective bargaining agreement is simply not applicable to situations in which, as here, the contested agreement arose from negotiations which occurred prior to the execution of *any* contract.[7]

■■ Seen in this light, the fact that the limitations on the application of the Agreement were oral is no ground to disregard them. There is no general require-

ment that collective bargaining contracts be in writing.[8] *NLRB v. Scientific Nutrition Corp., supra,* 180 F.2d at 449; *Warrior Constructors, Inc. v. International Union of Operating Engineers, Local 926,* 383 F.2d 700 (5th Cir. 1967). In circumstances analogous to those presented here, the Board has reached the same conclusion. *Stox Restaurant, supra.* In *Stox,* the express terms of a written collective bargaining agreement included hostesses and cashiers in the bargaining unit. However, the parties, apparently agreeing that such employees were actually supervisors, administered the contract so as to exclude them from coverage. When the employer later sought to include its cashiers and hostesses within the bargaining unit, the Board refused to do so:

"Although the record establishes that the hostesses and cashiers perform duties which are not supervisory in nature, we do not agree with the Employer's contention that they should now be placed in the traditional bargaining unit. These employees have been neither covered by the collective-bargaining agreement nor represented by the Union for the last 3 years because of the parties' agreement to exclude them from the collective-bargaining unit. Moreover, the Union has disclaimed any interest in representing them. We do not believe in these circumstances that the inclusion of the hostesses and cashiers in the historical units is warranted. We shall, therefore, exclude them from the substance of the Agreement between the Union and Denticator.

---

7. In addition, there appear to be other substantive policies at work in *Lerwill* and *Manning* which serve to distinguish them further from the instant case. In *Lerwill,* the overtime rights which the union attempted to waive were secured not only by contract but by the Fair Labor Standards Act. The court's holding thus rested, in part, on the principle that parties to a collective bargaining agreement may not waive statutory rights intended to benefit others. *Lerwill v. Inflight Services, Inc.,* 379 F.Supp. 690, 696 (N.D.Cal.1974). In *Manning,* the court confronted a contract which had been applied on a "members-only" basis. Such a practice has long been condemned by the Board. *Ron Wiscombe Painting & Sandblasting Co.,* 194 N.L.R.B. 907, 908 (1972); *Crucible Steel Castings Co.,* 90 N.L.R.B. 1843, 1844 (1950). As the discussion above indicated, there is no corresponding policy objection to

8. There do exist some circumstances, however, in which national labor policy does require some form of writing. For example, Section 8(d) of the National Labor Relations Act, 29 U.S.C. § 158(d), requires that a party to negotiations for a collective bargaining agreement *sign a written contract if requested to do so by* the other contracting party. Moreover, agreements which provide for pension fund contributions by an employer must be committed to writing. 29 U.S.C. § 186(c)(5)(B). Finally, as noted in *Lerwill,* parties desiring a modification of an existing collective bargaining agreement must serve written notice thereof. 29 U.S.C. § 158(d). None of these requirements is operative in the instant case.

overall unit." *Stox Restaurants, supra,* 172 N.L.R.B. at 1477.

The same result should obtain here, particularly when the oral understanding arose as part of the difficult task of applying an industry-wide collective bargaining agreement to the workplace of a small, nonsignatory employer.

### III.

Under the circumstances presented here, consideration of extrinsic evidence concerning application of the Agreement is appropriate. Such evidence discloses the existence of a limitation on the scope of the bargaining unit created by an oral agreement between the Union and Denticator which, in both form and substance, is proper. It therefore appears that plaintiff was not covered by the Agreement, and has no rights thereunder. Accordingly, there being no genuine issue as to any material fact, defendants' motion for summary judgment is granted.

Defendants shall prepare and lodge with the Court on or before March 1, 1979, a judgment approved as to form by plaintiff.