711 F.2d 69
 113 L.R.R.M. (BNA) 3208, 97 Lab.Cas. P 10,237
 Kenneth MOHR, on behalf of himself and all others similarly
situated, Plaintiffs-Appellants,
v.
METRO EAST MFG. CO., and International Molders and Allied
Workers Union, Local 220, Defendants-Appellees.
 No. 82-2156.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 18, 1983.
Decided June 24, 1983.
 
 George R. Ripplinger, Jr., Ripplinger, Dixon & Hoffman, Belleville, Ill., for plaintiffs-appellants.
 John O. Harris, Harris, Dowell, Risher, McCarthy & Kaemmerer, Fontaine, Chesterfield, Mo., Brad L. Badgley, Belleville, Ill., for defendants-appellees.
 Before CUMMINGS, Chief Judge, and PELL and POSNER, Circuit Judges.
 POSNER, Circuit Judge.
 
 
 1
 This appeal requires us to consider the application of the parol evidence rule to collective bargaining agreements. The defendant company, Metro East, upon its formation in 1967 joined an employers' association for industry-wide collective bargaining. The association negotiated the same year a collective bargaining agreement with the International Molders and Allied Workers Union, recognizing "the Union as the exclusive bargaining agent for all employees in the plant[s] of members of the Association." Metro East became bound by this agreement as a member of the association, and it also negotiated a supplemental agreement with a local (the other defendant in the case) of the Molders and Allied Workers Union. Both agreements were renewed at three-year intervals with no material change until 1980, when the supplemental agreement was modified to state explicitly that the unit represented by the union did not include "school boys"--part-time teen-age workers who are paid the minimum wage to do janitorial and other cleaning-up types of job.
 
 
 2
 The plaintiff, who had worked as a "school boy" for the company before 1980, brought this suit under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), alleging that he had been entitled under the collective bargaining agreement to union wages during his time with the company, and naming the union as an additional defendant because it refused to press his grievance against the company. If his claim against the company is no good, we need not consider his claim against the union or his challenge to the district court's refusal to certify his case as a class action on behalf of "school boys."
 
 
 3
 It is undisputed that the company has never paid union wages to the school boys and that this had been agreed upon between the company and the local union from the start; and it was on this basis that the district court dismissed the complaint on the defendants' motion for summary judgment. But until 1980, their agreement on this point had never been reduced to writing, and the plaintiff argues that evidence of the oral agreement was inadmissible under the parole evidence rule.
 
 
 4
 The law of contracts that is applied in suits under section 301(a) of the Labor Management Relations Act to enforce collective bargaining agreements is federal common law, rather than the law of the state where the agreement is signed or performed, or of any other state. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). It is common in other areas of federal common law for the court to adopt as the federal common law rule the law of the state whose law would govern under normal conflict of laws principles, see, e.g., Powers v. United States Postal Serv., 671 F.2d 1041, 1043 (7th Cir.1982); FDIC v. Braemoor Associates, 686 F.2d 550, 554 (7th Cir.1982), in this case Illinois. The argument for following this approach in section 301 cases as well is that since there is no comprehensive federal common law of collective bargaining contracts, the presumption would make it easier for unions and employers to draft such contracts against a known, definite, and complete background of contract law. However, the Supreme Court has opted for uniform rules for questions of contract formation, as distinct from remedy, under section 301. See Local 174, Teamsters Union v. Lucas Flour Co., 369 U.S. 95, 104, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962); International Union, United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 70203, 86 S.Ct. 1107, 1111-1112, 16 L.Ed.2d 192 (1966). Although the parol evidence rule has a procedural name, it is in fact a rule of contract formation and we are therefore obliged to apply a uniform national parol evidence rule rather than the parol evidence rule of a particular state.
 
 
 5
 The initial question is whether there should be any parol evidence rule for collective bargaining contracts, but we agree with the sparse authority on the point that there should be. See Lewis v. Owens, 338 F.2d 740, 742 (6th Cir.1964); Cappa v. Wiseman, 469 F.Supp. 437, 439 (N.D.Cal.1979), aff'd, 659 F.2d 957, 960 (9th Cir.1981). Though sometimes criticized, the rule is in force in all the states and, properly understood, serves the unexceptionable purpose, as pertinent to collective bargaining agreements as to any other type of contract, of "giving legal effect to whatever intention the parties may have had to make their writing a complete expression of the agreement that they reached, to the exclusion of all prior negotiations, whether oral or written." Farnsworth, Contracts 451 (1982).
 
 
 6
 Mr. Mohr is not barred from invoking the rule merely because he was not an employee when the company signed the original collective bargaining agreements. As soon as the plaintiff was hired, he became a third-party beneficiary of any agreements of his bargaining unit (whether he has a good claim under the agreements is, of course, a separate question); that is the premise of suits such as this, which are legion, in which an employee rather than the union or the employer is suing to enforce the collective bargaining agreement. The fact that the 1967 agreements were no longer in force when the plaintiff signed, because they were only three-year agreements, does not help the defendants either; they were renewed without material change, and so renewed were in force when the plaintiff signed on.
 
 
 7
 Nevertheless the parol evidence rule cannot carry the day for the plaintiff. The master agreement between the employers' association and the international union was not intended as a complete expression of the agreement between each member of the association and each local union, so evidence of the oral side agreement was admissible. See, e.g., Exchange Nat'l Bank v. De Graff, 110 Ill.App.3d 145, 153, 65 Ill.Dec. 683, 688-89, 441 N.E.2d 1197, 1202-03 (1982); Farnsworth, supra, at 451-53. The fact that the master agreement was not intended to be the complete agreement of Metro East and the local is shown by the fact that the defendants entered into a supplemental agreement (itself clearly not intended as a complete expression of the parties' agreement) covering specific terms and conditions of employment, and more fundamentally by the fact that it is not the purpose of industry-wide collective bargaining to erase all differences in labor relations within the industry. This is not to say that the labor-relations setting makes the parol evidence rule inapposite but only that in deciding whether the premise for applying the rule to a particular contract--that a written agreement or agreements were intended to be a complete expression of the agreement between the defendants--is present, sensitivity to context is required.
 
 
 8
 This interpretation is supported by the fact that both the master and the supplemental agreements were renewed several times without amendment even though the defendants were undeviatingly excluding the school boys from the collective bargaining unit. Evidently no contradiction was sensed. And even if there was a contradiction it would not be fatal to the defendants' position, because it is standard contract law--and standard contract law eminently suitable for collective bargaining agreements, see Certified Corp. v. Hawaii Teamsters & Allied Workers, 597 F.2d 1269, 1271 (9th Cir.1979)--that written contracts can be modified orally, which is one interpretation of what the defendants had done, but not the most accurate. The agreement between the association and the international union was deliberately left incomplete in recognition of the diversity of circumstances to which it had to apply, thus allowing individual employers and their local unions to add to the provisions, whether by supplemental written agreements, or oral agreements, or as in this case by both sorts.
 
 
 9
 Finally, the plaintiff cannot have been misled by the terms of the written agreement, since he signed on for "school boy" wages and it did not occur to him till long after he was fired that he might have a claim for union wages.
 
 
 10
 AFFIRMED.