227 F.3d 1150 (9th Cir. 2000)
 RANDALL E. PACE, JR.; HENRY TACUB; WADE HANSON; ROSALINO BALLESTEROS, on behalf of themselves and former and current employees of Honolulu Disposal Service, Inc. and/or Alii Refuse Corporation, Plaintiffs-Appellants,
v.
HONOLULU DISPOSAL SERVICE, INC.; ALII REFUSE CORPORATION; CLYDE KANESHIRO; LABORERS INTERNATIONAL UNION OF NORTH AMERICA, Local 368, AFL-CIO; The Members of the Executive Board of the Laborers International Union of North America, Local 368, AFL-CIO being Benjamin Saguibo, Norma Jimeno, Mel Cremer, Norman K. Janicki, Jr., Oliver Kupau III, Clayton Saguibo, Herbert Loo, Sally Forges, Rick Pagatpatan, Bernaldo Pascua and Larry Sadaba; HAWAII LABORERS' TRUST FUNDS, (Hawaii Laborers' Health and Welfare Trust Fund and its trustees Harry Ushijima, Greg Muth, Albert Hamamoto, John Murchison, Mel Cremer, Elmo Sinclair, Benjamin Saguibo, Daniel Nakamura, Stephanie Mahelona, John Roxburgh Jr., and Larry Cadiz; Hawaii Laborers' Pension Trust Fund and its trustees Stanley Wada, Daniel Nakamura, Ernie Bello, Randall Ching, Wilton Ching, Anacleto Alcantra, Norman Janicki Jr., Benjamin Saguibo, Mel Cremer, Norman Janicki Sr., Larry Cadiz; Marilyn Tanaka, Larry Sadaba, John Murchison; E.S. Akin and Cynthia Tolentino; Hawaii Laborers' Training TrustFund and its trustees Anacleto Alcantra, Edwin Huligee, Richard Honjiyo, Ryan Y. Wada, Gilbert Ho; Benjamin Saguibo, Alvis McCann, Melvin Kalama, Ryan Tohara, Scott Higa, Oliver H. Kupau, III; John Roxburgh, Jr.; and Cynthia Tolentino; Hawaii Laborers' Vacation & Holiday Trust Fund and its trustees Tamateru Kodama, Leonard Song, Vincent K. Nihipali Sr., Walter Arakaki, Salvador Ambrocio, Benjamin Saguibo, Ismael Solis, Clayton Saguibo, and John Roxburgh, Jr., Hawaii Laborers' Annuity Trust Fund and its trustees Walter Arakaki, Vincent K. Nihipali Sr., Richard Honjiyo, Tamateru Kodama, Leonard Song, Melvin Kalama, Salvador Ambrocio, Clayton Saguibo, Rick Pagatpatan and Ismael Solis dba Hawaii Laborers' Pension Trust Fund dba Hawaii Laborers Training Trust Fund dba Hawaii Laborers' Vacation & Holiday Trust Fund dba Hawaii Laborers' Annuity Trust Fund); AMERICAN BENEFIT PLAN ADMINISTRATORS INC.; WAYNE CHUN, Defendants-Appellees.
 No. 99-15796
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted August 3, 2000
Filed September 25, 2000
 
 [Copyrighted Material Omitted]
 James J. Bickerton and William Saunders, Bickerton Saunders Dang & Bouslog, Honolulu, Hawaii, and Jerrold Y. Chun, Chun Chipchase Takayama Nagatani, Honolulu, Hawaii, for the appellants.
 Wesley M. Fujimoto and Paul A. Schraff, Dwyer Imanaka Schraff Kudo Meyer & Fujimoto, Honolulu, Hawaii, for appellees Honolulu Disposal Service, Inc., Alii Refuse Corporation, and Clyde Kaneshiro.
 Colleen Hanabusa, Colleen Hanabusa, A Law Corporation, Honolulu, Hawaii, for appellee The Laborers International Union of North America, Local 368, AFL-CIO.
 Alfredo G. Evangelista, Evangelista & Quiban, Honolulu, Hawaii, for appellees Hawaii Laborers' Trust Funds, American Benefit Plan Administrators, Inc., and Wayne Chun.
 Appeal from the United States District Court for the District of Hawaii. Helen Gillmor, District Judge, Presiding. D.C. No. CV-97-00335-HG
 Before: Harry Pregerson, Michael Daly Hawkins, and M. Margaret McKeown, Circuit Judges.
 McKEOWN, Circuit Judge:
 
 
 1
 We must resolve a conflict between the clear language of a series of collective bargaining agreements ("CBAs") and decide whether evidence of an oral agreement is admissible to supplement the terms of unambiguous CBAs. The heart of the case is a contractual rather than representational dispute, and the district court had jurisdiction to decide it. Because we conclude that the parol evidence rule bars admission of an oral agreement that not only contradicts the terms of an unambiguous CBA but would essentially eviscerate its plain language, we reverse.
 
 BACKGROUND and PROCEEDINGS
 
 2
 Appellants, four former and current employees who have worked as roll-off drivers (the "Drivers") for Honolulu Disposal Service, Inc. ("HDS"), claim that they are entitled to wages and benefits under a series of written CBAs from 19791996 negotiated by HDS and The Laborers International Union of North America, Local 368, AFL-CIO (the "Union").
 
 
 3
 Appellees, HDS, the Union, and several union trust funds (the "Trust Funds"),[1] argue that the Drivers are not covered by the CBAs because HDS and the Union orally agreed to limit the scope of the bargaining unit to a couple of employees not including these Drivers. Invoking the doctrine of primary jurisdiction to challenge both the district court's and our jurisdiction, appellees contend that this case boils down to a representational dispute over who is in the bargaining unit--or, to put it another way, whom the Union represents--that must be decided in the first instance by the National Labor Relations Board ("NLRB"). They alternatively argue that even if there is federal court jurisdiction, the oral agreement between HDS and the Union is admissible and enforceable and precludes the Drivers from recovering under the CBAs. The Drivers counter that this is a contractual rather than representational dispute and argue that the oral agreement, the very existence of which they question, is not admissible.
 
 
 4
 The genesis of this case dates back to 1978, when Liborio Cadiz, then a Union business agent, approached Clyde Kaneshiro, then vice president of HDS, after seeing him drive a refuse truck onto a construction site. After Cadiz told Kaneshiro that HDS had to sign up with the Union to haul refuse from the site, they agreed to establish a collective bargaining relationship allegedly on the oral understanding that the bargaining unit would be limited to a "couple " of HDS drivers. Kaneshiro then signed a written, Union-prepared CBA. This was the first of six CBAs at issue here.
 
 
 5
 This CBA, effective from 1979-81, is titled "Master Agreement By and Between" HDS and the Union. Section 1 contains a coverage provision stating, in relevant part:
 
 
 6
 The Company recognizes the Union as the exclusive collective bargaining representative of its employees employed in the State of Hawaii in the job classifications set forth in Exhibit "A," excluding clerical employees, office employees, watchmen, guards, part time employees who work less than thirty hours per week, and all supervisors as defined in the National Labor Relations Act, as amended.
 
 
 7
 Exhibit A lists seven classifications of workers, including "Roll-Off Driver."
 
 
 8
 Three sections of the CBA covering health/welfare, pension, and annuity trust funds, state, respectively, that "[t]he Company shall participate in the" fund and "shall contribute . . . for each hour worked by each employee covered by this Agreement, the following amounts" as specified in the CBA. The CBA also contains a clause prohibiting oral modification ("no-oral-modification clause"), titled "Modification of Agreement," which provides that "[t]his Agreement shall not be amended, modified, changed, altered or waived except by written document executed by mutual agreement between the parties hereto," and an integration clause,[2] titled "Document Contains Entire Statement," which asserts, "[t]his document contains the entire Agreement of the parties and neither party has made any representations to the other which are not contained herein."
 
 
 9
 When the first CBA expired, HDS and the Union enteredinto a new CBA, effective from 1982-85, similar in relevant respects to the first. This second CBA also has no-oralmodification and integration clauses. The "Employees Covered" subsection of the section devoted to coverage is similar to the coverage provision in the first CBA; it states that "employees covered . . . are all regular full time employees of the Contractor employed in the State of Hawaii in the classifications set forth in the classification and hourly wage schedule which is attached hereto as Exhibit `A,' . . . except for office clerical employees . . . and supervisors . . . . " Exhibit A, as in the first CBA, lists the same seven classifications, including roll-off drivers. The second CBA also includes similar health/welfare, pension, and annuity trust fund provisions and adds a training fund provision requiring the contractor to participate in and contribute to the fund on the same basis as the other funds, that is, "for each hour worked by each employee covered by this Agreement."
 
 
 10
 The next four CBAs, spanning the years 1987-89, 1990-92, 1993-96, and 1996-99,[3] contain coverage provisions, no-oralmodification clauses, integration clauses, and trust fund provisions similar to those in the second CBA, and in each case Exhibit A lists roll-off drivers as a covered classification.[4]
 
 
 11
 HDS and the Union contend that they applied the oral agreement reached in 1978 to each successive CBA, such that the bargaining unit remained limited to two or three designated people who knew they were in the unit.[5] Although each of the six CBAs was prepared by the Union, none reflects this oral agreement. Indeed, HDS and the Union have submitted affidavits conceding that the bargaining unit language in the six CBAs "does not accurately reflect the oral agreement" to restrict the scope of the unit.
 
 
 12
 Each of the Drivers worked as a roll-off driver at HDS for some period of time between 1979 and 1996, and each claims to have performed the same work as the few HDS drivers who were in the Union. The Drivers--who are covered on the face of the CBAs, given the listing of roll-off drivers in Exhibit A, but are not covered under the alleged oral agreement-brought this class-action suit to recover wages and benefits claimed under the CBAs.
 
 
 13
 HDS, joined by the Union and the Trust Funds, moved to dismiss the suit, arguing that the district court lacked jurisdiction because plaintiffs' claims were representational claims within the primary jurisdiction of the NLRB. The district court denied the motion, holding that it had jurisdiction to hear the claims "to the extent that there is a contractual issue." The court relied on Cappa v. Wiseman, 659 F.2d 957 (9th Cir. 1981), in finding that it had jurisdiction to "[d]etermin[e] the validity of the CBAs and any side agreements" thereto.
 
 
 14
 Faced with the court's decision finding jurisdiction on contractual issues, HDS, the Union, and the Trust Funds moved for summary judgment, contending that HDS and the Union had an oral agreement limiting the bargaining unit--and thus the coverage of the CBAs--to only a couple of employees not including the Drivers. The Drivers filed a motion for partial summary judgment on the issue of liability, contending that the CBAs, on their face, covered roll-off drivers and arguing that the alleged oral agreement was both inadmissible and illegal. The court granted summary judgment in favor of HDS, the Union and the Trust Funds and then denied as moot the Drivers' motions for summary judgment and for class certification.
 
 
 15
 Finding Cappa to control once again, the court held that the parol evidence rule did not preclude extrinsic evidence--here the oral agreement--given that the CBAs "appear to have been a CBA form adapted to fit the agreement between the Union and HDS." The court then found that summary judgment was appropriate because the Drivers had not raised any material issues of fact regarding the oral agreement. The court rejected the Drivers' claim that the oral agreement was illegal under 302(c)(5)(B) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. 186(c)(5)(B), which requires that provisions concerning trust fund payments be in writing, as well as their argument that the no-oral-modification clauses nullified the oral agreement. Finally, referencing its prior ruling on the motions to dismiss, the court noted that "if the oral agreement between HDS and the Union were not valid, the Court would not have jurisdiction to hear this case."
 
 
 16
 The Drivers appealed the district court's summary judgment ruling. Appellees now press their jurisdictional argument once again.[6]
 
 DISCUSSION
 
 17
 We review jurisdictional challenges invoking the primary jurisdiction doctrine de novo. See, e.g., International Bhd. of Teamsters v. American Delivery Serv. Co., 50 F.3d 770, 773 (9th Cir. 1995). We also review a grant of summary judgment de novo. See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998).
 
 A. Standing and Jurisdiction
 
 18
 Appellees challenge the Drivers' standing to bring their claims, arguing that 301 of the LMRA limits standing to members of the bargaining unit. We disagree. The Drivers have standing to assert claims for wages and benefits under the CBAs. As in Cappa, the Drivers face an alleged oral agreement that excludes them from the bargaining unit. Cappa was permitted to sue under 301 for wages claimed under a CBA even though he lost on the merits when we ultimately concluded that the oral agreement was valid and that Cappawas therefore not part of the bargaining unit. See Cappa, 659 F.2d at 959 ("Appellant could bring this section 301 action in district court since he was seeking to recover wages to which he claimed he was entitled under the terms of the collective bargaining agreement."). The Drivers also have standing to assert claims for benefits; such claims constitute uniquely personal rights, similar to wages, conferring standing to sue under 301. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976) ("S 301 suits encompass those seeking to vindicate `uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge"); Gutierrez v. United Foods, Inc., 11 F.3d 556, 560 (5th Cir. 1994) (distinguishing between "uniquely personal rights," which are "amenable to individual enforcement, " and "a collective right of all union members," which is "reserved to the union to enforce").
 
 
 19
 We also disagree with appellees' contention that the Drivers' claims raise representational issues that must be decided in the first instance by the NLRB under the doctrine of primary jurisdiction. This case presents contractual issues that the federal courts have jurisdiction to entertain under 301 of the LMRA.
 
 
 20
 Before addressing the merits of the jurisdictional issue, we turn first to the parties' opposing views on the procedural posture of this question. The Drivers' argument that appellees had to raise the primary jurisdiction issue in a cross-appeal misses the mark. This doctrine is unlike garden-variety defenses such as in personam jurisdiction, for it implicates the "strong policy of judicial deference to" the NLRB on representation issues. Local No. 3-193 Int'l Woodworkers v. Ketchikan Pulp Co., 611 F.2d 1295, 1299 (9th Cir. 1980). Its importance is such that in Cappa, 659 F.2d at 958-59, we raised the primary jurisdiction doctrine sua sponte.
 
 
 21
 We also reject appellees' claim that the Drivers' failure to attack the district court's jurisdictional ruling precludes them from prevailing. Appellees argue, in essence, and in the absence of supporting authority, that they should prevail regardless of the validity of the oral agreements. Their contention is that they should prevail even if this agreement is invalid because the court asserted only limited jurisdiction when it stated in its summary judgment order that "if the oral agreement between HDS and the Union were not valid, the Court would not have jurisdiction to hear this case."
 
 
 22
 We note that the district court's characterization, on summary judgment, of its earlier ruling on the motions to dismiss appears somewhat narrower than its actual ruling that it had jurisdiction to hear the claims "to the extent that there is acontractual issue." More importantly, we reject appellees' argument given our de novo review of subject matter jurisdiction determinations. We also note that the court did assume jurisdiction over this case with regard to contractual issues and that its comment about limited jurisdiction in the summary judgment order did not nullify the jurisdiction which the court properly exercised.
 
 
 23
 "The doctrine of primary jurisdiction is a recognition of congressional intent to have matters of national labor policy decided in the first instance by the National Labor Relations Board." United Ass'n of Journeymen v. Valley Engineers, 975 F.2d 611, 613 (9th Cir. 1992) (quoting Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distribs., 689 F.2d 1339, 1342 (9th Cir. 1982)). Issues falling within the NLRB's primary jurisdiction include designation of an exclusive bargaining agent and identification of an appropriate collective bargaining unit under 9 of the LMRA. See Ketchikan Pulp, 611 F.2d at 1298. Such "representational issues" are "more appropriately resolved by the NLRB" than by the courts, Hotel Employees, Restaurant Employees Union, Local 2 v. Marriott Corp., 961 F.2d 1464, 1468 (9th Cir. 1992), given the agency's "superior expertise." Valley Engineers, 975 F.2d at 613.
 
 
 24
 We have characterized 301,[7] which gives district courts jurisdiction over contractual disputes, as an "exception to the primary jurisdiction doctrine . . . designed to afford the courts jurisdiction to resolve labor disputes that focused on the interpretation of the terms of the collective bargaining agreement." Valley Engineers, 975 F.2d at 614 (quoting Custom Auto Glass Distribs., 689 F.2d at 1342-43). Although 301 confers concurrent jurisdiction upon the NLRB and federal courts, we have recognized that district courts "must tread lightly" in areas of the NLRB's primary jurisdiction and "must continue to defer when, on close examination, section 301 cases fall within the NLRB's primary jurisdiction." Id. at 613-14. Indeed, we have warned that "end run[s] around Section 9 of the [National Labor Relations] Act .. . under the guise of contract interpretation . . . cannot be countenanced," Ketchikan Pulp, 611 F.2d at 1299-1300, and we have drawn the jurisdictional line by asking "whether the major issues to be decided . . . can be characterized as primarily representational or primarily contractual." Valley Engineers, 975 F.2d at 614 (internal quotations and citations omitted).
 
 
 25
 This case falls on the "primarily contractual" side of the line. "[S]tripped to essentials," Valley Engineers, 975 F.2d at 614, it turns on a question of contract interpretation, and thus is properly in federal court rather than before the NLRB. We must decide whether the plain language of a series of CBAs applies, or whether the proffered oral agreement trumps the written contract. This is a classic contractual dispute, given "representational" overtones only by the fact that appellees raised in defense an oral agreement that is inconsistent with the written contracts--an oral agreement that purports to limitthe bargaining unit.
 
 
 26
 In addition, "the doctrine of primary jurisdiction does not apply in determining a union's past representational status."[8] United Bhd. of Carpenters v. Endicott Enters. Inc., 806 F.2d 918, 921 (9th Cir. 1986), overruled prospectively on other grounds by Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers, 861 F.2d 1124 (9th Cir. 1988) (en banc), and 895 F.2d 516 (9th Cir. 1990). Here, the Drivers seek wages and benefits under CBAs that were operative from 1979 to 1996; they do not seek any determination with regard to what now constitutes an appropriate bargaining unit or with regard to whether any union now represents any HDS employee. Accordingly, we hold that the district court had jurisdiction to hear this case.
 
 B. Parol Evidence Rule
 
 27
 Appellees concede that the CBAs, on their face, cover roll-off drivers but argue that evidence of the oral agreement restricting the scope of the bargaining unit is admissible and overrides the written contracts. We disagree. Faced with clear, unambiguous written agreements containing integration clauses and no-oral-modification clauses, and in the absence of language acknowledging any supplemental agreements, we hold that the parol evidence rule bars introduction of evidence of a proffered oral agreement that directly contradicts a key term of the written contracts.
 
 
 28
 Although the parol evidence rule is not applied as strictly in the context of collective bargaining agreements,[9] it still operates to bar extrinsic evidence of an agreement inconsistent with an unambiguous writing.[10] See Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, 827 F.2d 1324, 1327 (9th Cir. 1998). In Pierce County, an employer sought to introduce several types of extrinsic evidence--including oral "side agreement[s]" with a union "exempting temporary workers from contributions" to trust funds--to defend against a suit brought by the trust funds to recover unpaid contributions accruing from 1980 to 1985 under a series of CBAs signed in 1974, 1977, 1980, and 1983. Id. One of the oral agreements, as evidenced by a letter of confirmation in 1979, was made prior to the 1980 and 1983 CBAs but after the 1974 and 1977 CBAs; the other was made in 1983, when the parties, negotiating the 1983 CBA, again orally agreed to exempt temporary workers from the trust fund contribution provisions.[11]See id. at 1326. We held that "[e]xtrinsic evidence is inadmissible to contradict a clear contract term, but if a term is ambiguous, its interpretation depends on the parties' intent . . . in light of earlier negotiations, later conduct, related agreements, and industrywide custom." Id. at 1327 (citations omitted). Applying this rule to the circumstances in Pierce County, we affirmed the exclusion of extrinsic evidence:
 
 
 29
 The Lodge has attempted to create an ambiguity where none is present. Articles XX and XXI require contributions for any person performing work under the agreement, meaning any employee in the bar gaining unit as defined in Article I.[12] The class of bargaining unit employees is not limited to union members. The contribution provisions can reason ably be read but one way: the Lodge must make con tributions for any covered employee, whether or not a union member. Since the agreements unambigu ously require contributions for temporary employees, the court correctly disregarded extrinsic evidence of the parties' intent.
 
 
 30
 Id. (footnote added).
 
 
 31
 Although Pierce differs from this case in that the oral agreements there were made on two occasions after the inception of the bargaining relationship between the employer and the union, see id. at 1326, it demonstrates that evidence of prior or contemporaneous oral agreements is inadmissible to contradict an unambiguous written contract.[13] Neither the 1979 nor the 1983 oral agreement could be used to interpret the written CBAs because they directly contradicted clear contract terms. In rejecting the employer's alternative claim that the agreements were permissible modifications to the CBAs, we reiterated this point when we specified that the 1979 letter showing the parties' prior oral agreement was "inadmissible to contradict the unambiguous terms of the 1980 contract." Id. at 1328.
 
 
 32
 Here, as in Pierce County, the CBAs are unambiguous, extending coverage to "all regular full time employees of the Contractor employed . . . in the classifications set forth in . . . Exhibit `A,' " and the proffered oral agreement contrasts starkly with the written language. The oral agreement to restrict the bargaining unit to a handful of drivers is unquestionably inconsistent with the straightforward and broad coverage provisions of the CBAs. The gap between "all" employees listed in Exhibit A and a "couple" of drivers could hardly be more dramatic.
 
 
 33
 Faced not only with this direct contradiction on a crucial term of coverage, but also with provisions in the CBAs that specifically disavow supplemental oral agreements, we conclude that the parol evidence rule operates to bar consideration of the oral agreement. Notable in this case is the inclusion of a "zipper clause" in each CBA--so called because the combination of the integration and no-oral-modification clauses is intended to foreclose claims of any representations outside the written contract aside from those made in another written document executed by the parties. Cf. Merk v. Jewel Food Stores, 945 F.2d 889, 893 (7th Cir. 1991) ("If an agreement is completely integrated, . . . not even evidence of a `consistent additional term' may be introduced to elucidate the writing." (citation omitted)).
 
 
 34
 Also notable is the absence of any language even hinting at the possibility of supplemental agreements made prior to or contemporaneous with any of the CBAs--or, for that matter, any supplemental oral agreements made thereafter and somehow applied to a series of six written CBAs covering some twenty years. On this basis, Cappa is clearly distinguishable,[14] for there the CBA "expressly recognize[d] the existence of supplementary agreements."[15]Cappa v. Wiseman, 469 F. Supp. 437, 440 (N.D. Cal. 1979), aff'd, 659 F.2d at 960 (adopting the reasoning and decision of the district court on the merits). In Cappa, the plaintiff sued for wages under a CBA negotiated by a union and two employers' associations and signed by the defendant company, which was not a member of either association. Id. at 438. The company, which employed only one person who regularly performed work covered by the CBA, agreed to execute the CBA with the supplemental oral proviso that it would apply only to that individual. Id. Over the course of successive CBAs, the parties, "consistent with their initial understanding, . .. applied the terms thereof to a single employee." Id. The company eventually hired a second employee, the plaintiff, to perform work covered by the job classifications contained in the CBA, but he did not receive the wages and benefits provided for in the CBA. Id. at 438-39. After he was terminated, he sued for union wages. Id. at 439.
 
 
 35
 Here, as in Cappa, appellees proffer an oral agreement that, although never committed to writing, is alleged to be part and parcel of the written CBAs. But unlike Cappa, the CBAs are not ambiguous on their face, nor do they contain any provision recognizing the possibility of supplemental agreements. Rather, they expressly refer to the Union as the "exclusive collective bargaining representative" for employees in the job classifications set forth in Exhibit A. In all of the CBAs, each Exhibit A lists roll-off drivers, and there are no open-ended provisions contemplating that other agreements might exist and continue in force. On the contrary, the CBAs contain integration and no-oral-modification clauses, as noted above, the purpose of which is to disavow and disclaim just the sort of oral agreement proffered here. Precisely the opposite was true in Cappa, where two provisions referenced the possibility of supplemental agreements, and another made the ambiguouspronouncement that "particular characteristics of certain firms must be recognized." Cappa, 469 F. Supp. at 440. Under these circumstances, we cannot sanction the introduction of parol evidence that would eviscerate the very essence of the contracts. The district court erred in admitting evidence of the proffered oral agreement.
 
 CONCLUSION
 
 36
 For the foregoing reasons, we conclude that there is federal court jurisdiction over this case, reverse the district court's judgment,[16] and remand for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 For ease of reference, we follow appellees' practice of classifying the numerous defendants into three groups, referred to here as HDS, the Union, and the Trust Funds. We note that HDS and Alii Refuse Corporation concede that they are a single employer; unless otherwise specified, "HDS" will be used to refer to both companies. Several individuals are also named in this suit but need not be separately identified for purposes of this opinion.
 
 
 [2]
 Likewise, in another section, the CBA states that "this Agreement is the sole Agreement between the parties" and that "all matters and conditions properly the concern of negotiation and agreement between the parties hereby are covered by the terms of this Agreement."
 
 
 [3]
 The 1996-99 CBA was voided by a settlement agreement that HDS and the Union accepted following issuance of an NLRB complaint alleging that they had committed unfair labor practices in 1996 by entering into the CBA even though the Union did not represent a majority of the employees in the bargaining unit and had not been recognized as their representative.
 
 
 [4]
 Starting with the third CBA, the number of classifications listed in Exhibit A began to vary; the 1987-89 and 1990-92 CBAs list only one classification, the 1993-96 CBA lists three, and the 1996-99 CBA lists twelve. In each case, however, roll-off drivers are listed.
 
 
 [5]
 From time to time, HDS, through Kaneshiro, added employees (other than the Drivers) to the unit. Cadiz's deposition testimony suggests that additions were made when he or others policing the jobsite saw non-Union drivers coming onto the site. Kaneshiro testified in his deposition that he had "no basis" for deciding which employees would be in the Union.
 
 
 [6]
 No party has appealed the district court's ruling on the motions to dismiss. On September 17, 1999, a motions panel of this court denied HDS's motion to dismiss for lack of jurisdiction without prejudice to renewing the argument before this panel.
 
 
 [7]
 Specifically, 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . , or between any such labor organizations, may be brought in any district court of the United States . . . ." 29 U.S.C. 185(a).
 
 
 [8]
 In so holding, we approved dicta from an earlier case in which we stated: "The [NLRB] has expertise in determining the majority status of a union at any given time. It has no apparatus for determining a union's past status. . . . Recreation of past relationships for the purpose of resolving factual disputes is one of the traditional functions of a trial court, and not a process in which the N.L.R.B. has any extraordinary expertise. Therefore, in this opinion we do not extend the District Court's jurisdiction into an area in which the N.L.R.B. exercises exclusive authority." See Endicott, 806 F.2d at 921 (alteration in original)(quoting Todd v. Jim McNeff, Inc., 667 F.2d 800, 804 (9th Cir. 1982), aff'd, 461 U.S. 260 (1983)).
 
 
 [9]
 See, e.g., Cappa v. Wiseman, 469 F. Supp. 437, 439-40 (N.D. Cal. 1979) ("Restricting the interpretation of a collective bargaining agreement to its express terms is extremely unrealistic in circumstances where, as here, the parties have not actually negotiated the agreement themselves, but have attempted to adapt the terms of an industry-wide agreement to conditions in the workplace of a relatively unique .. . independent employer."), aff'd, 659 F.2d at 960 (adopting the reasoning and decision of the district court on the merits); Mohr v. Metro East Mfg. Co., 711 F.2d 69, 72 (7th Cir. 1983) (holding that the parol evidence rule applies to CBAs but that "sensitivity to context is required " in deciding "whether the premise for applying the rule to a particular contract--that a written agreement or agreements were intended to be a complete expression of the agreement between the defendants--is present").
 
 
 [10]
 We have taken care not to sanction the admission of parol evidence where the proffered evidence contradicts the written contract. See, e.g., Syufy Enters. v. Northern Cal. State Ass'n of IATSE Locals, 631 F.2d 124, 126 (9th Cir. 1980) ("We do not hold that an arbitrator may rely upon negotiating history to contradict express provisions of a collective bargaining agreement. The arbitrator in this case relied upon credible, documentary evidence of the party's intent to extend the coverage of the contract, not to contradict it."). Appellees cite no case admitting parol evidence that is wholly inconsistent with the terms of a written CBA. Cappa, as explained infra, is distinguishable given its explicit recognition of the possibility of supplemental agreements.
 
 
 [11]
 Appellees similarly contend that HDS and the Union renewed their oral understanding with each new CBA.
 
 
 [12]
 We had already concluded that
 Article I of each collective bargaining agreement recognizes the Union as the exclusive bargaining agent of all Lodge employ ees working in the specified classifications. Employees are defined as all Lodge employees excluding office employees, owner-supervisors and their close relatives. Thus, nonunion tem porary employees performing work in the agreements' specified classifications are members of the bargaining unit and are defined as employees under the agreements.
 Pierce County, 827 F.2d at 1327.
 
 
 [13]
 Other circuits concur in this approach. See, e.g., Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund, 206 F.3d 680, 683 (6th Cir. 2000) (refusing, where CBA was unambiguous, to consider parol evidence of "informal arrangement" between employer and union to exclude casual drivers from employer's obligation under CBA to make pension contributions for new employees); Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431, 102 F.3d 1464, 1468 (8th Cir. 1996) ("When the language of the contract is clear and unambiguous, . . . as in the present case, the arbitrator may not rely on parol[ ] evidence."); Merk v. Jewel Food Stores, 945 F.2d 889, 892 (7th Cir. 1991) ("The parol evidence rule provides that evidence of prior or contemporaneous agreements or negotiations may not be introduced to contradict the terms of a partially or completely integrated writing.").
 
 
 [14]
 In addition, the CBA in Cappa, unlike the clear CBAs that we are asked to interpret, was "far from being an unambiguous instrument, the terms of which are sufficient unto themselves . . . ." Cappa, 469 F. Supp. at 440. We also note that HDS, the employer here, was specifically named as a negotiating party to the contract, unlike the small, independent employer in Cappa that had not negotiated the contract and was not a member of one of the employer associations that did so. We need not, however, decide whether the district court was correct in concluding that the CBAs "appear to have been a CBA form adapted to fit the agreement between the Union and HDS," as was the case in Cappa, given our holding that the parol evidence rule bars admission of evidence of the oral agreement.
 
 
 [15]
 Such provisions included: 1)"This Master Agreement shall supersede all existing agreements . . . provided, however, that special conditions of employment peculiar to certain Employers provided for in existing agreements supplementary to this Master Agreement shall be continued in force"; 2) "The Union is recognized as the sole collective bargaining agency for the employees employed in the classifications set forth in this Master Agreement and in agreements supplementary hereto in force and effect on the date of this Master Agreement"; and 3) "[B]oth parties recognize that particular characteristics of certain firms must be recognized . . . ." Cappa, 469 F. Supp. at 440 (emphasis added).
 
 
 [16]
 Given our resolution of this appeal on parol evidence grounds, we need not decide whether 302(c)(5)(B) of the LMRA renders the alleged oral agreement unenforceable, nor need we decide whether the no oral modification clauses suffice to nullify the oral agreement or whether thereare material issues of fact as to the existence of the oral agreement.