**PACIFIC NORTHWEST BELL TELEPHONE COMPANY, a corporation, Appellant,**

v.

**COMMUNICATIONS WORKERS OF AMERICA, an unincorporated association, Appellee.**

No. 17645.

United States Court of Appeals Ninth Circuit.

Nov. 1, 1962.

Hart, Rockwood, Davies, Biggs &
Strayer, James P. Rogers, Charles J.
McMurchie, and Donald W. Morrison,
Portland, Or., for appellant.

Duane W. Anderson, San Francisco,
Cal., Lenon & Willner, and Don S. Will-
ner, Portland, Or., for appellee.

Before ORR, MERRILL and
BROWNING, Circuit Judges.

MERRILL, Circuit Judge.

Appellant is a Washington corporation
engaged in the business of transmitting
communications in interstate commerce.
Appellee is the labor organization which,
under collective bargaining contract, rep-
resents appellant's employees. Appellant
has brought this suit under § 301(a) of
the Labor-Management Relations Act
(29 U.S.C. § 185(a)) seeking a declara-
tion that it has no obligation under the
terms of its collective bargaining con-
tract to submit to arbitration a specific
dispute now existing between the par-
ties.

The district court held that the dis-
pute was one which the parties were re-

quired to arbitrate under their agreement. In so ruling it excluded from evidence history of the bargaining from which the contract resulted.

Appellant here contends (1) that the arbitration clause of the contract upon its face excludes this dispute from its application, (2) that the arbitration clause should be construed in the light of bargaining history and that the district court erred in refusing to consider evidence of such history.

The underlying dispute relates to the company's right to discipline its employees by suspension. An employee, Johnson, had violated a company rule by purchasing gasoline for a company car at a too distant station. For this violation he was suspended for the balance of the business day, a matter of some six hours, with a loss of pay for this period of time. Aggrieved by this treatment the employee presented his grievance to appellee, who on his behalf pursued without success the grievance procedures provided by the collective bargaining contract.[1] Failing to secure satisfactory adjustment, appellee requested arbitration of the following issue: "Did the company violate the collective bargaining agreement by the disciplinary suspension of Johnson?" Appellant rejected arbitration and brought this action.

The contract contains the following provision for the arbitration of grievances:

"After such request [for arbitration] has been made, the grievance shall be arbitrated subject to the following conditions:

"(a) The provisions for arbitration shall apply only to controversies between the Union and the Company regarding the true intent and meaning of any provision of this Contract, or regarding a claim that either party hereto has not fulfilled a commitment made in this Contract. * * * "

[1]. Also suspended by the company were two employees who had accompanied Johnson at the time of the gasoline purchase. Through pursuing the contract's griev-

An article of the contract does deal with dismissal but the contract does not deal expressly with the matter of disciplinary suspension.

■■ Appellant's first contention is that since there is no provision dealing with disciplinary suspension the arbitration clause excludes from its coverage all disputes relating to such discipline. Appellant emphasizes that this is not the "standard" arbitration clause providing for arbitration of "any disputes, misunderstandings, differences or grievances arising between the parties as to the meaning, interpretation and application of this agreement": such a clause as was under consideration in United Steel Workers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403. Appellant emphasizes the language of the clause as follows:

"The provisions for arbitration shall apply *only* to controversies between the union and the company regarding the true intent and meaning of *any provision of this contract* or regarding a claim that either party hereto has not fulfilled a commitment *made in this contract.*"

Appellant asserts that instead of the clause providing generally for arbitration and then specifying exclusions, the clause specifies those areas which are the only ones subject to arbitration. It thus construes the contract to limit arbitration to those matters with which the contract expressly deals.

As we discuss later, collective bargaining contracts by their very nature cannot fairly be limited to their express provisions. The parties may well be found to have impliedly committed themselves in many respects including, as suggested by Mr. Justice Brennan, concurring in American, supra, at page 572, 80 S.Ct. at page 1365, " * * * implied covenants of good faith and fair dealing * * *."

ance procedures these suspensions were successfully revoked. Only as to Johnson did the company hold fast.

Furthermore, appellee contends that appellant's asserted right to suspend reflects upon the terms of the contract relating to dismissals and requires a determination of "the true intent and meaning" of those provisions. The lesson we learn from American is that the courts may not, in the face of an arbitration clause, lightly dismiss such a contention as without merit.

We conclude that the arbitration clause does not on its face fail to include this dispute within its coverage.

We turn to the questions raised by the district court's refusal to consider bargaining history.

■ The first question related to the parol evidence rule. Appellee asserts (and apparently the district court agreed) that evidence of bargaining history in this case would serve to change, vary and contradict the terms of the agreement; and that all prior understandings must be held merged into the expressions of the written contract.

We cannot agree. It simply cannot be said that as to the arbitrability of disciplinary suspension the contract's meaning is plain when the fact is that the contract is silent. As has been frequently pointed out, agreements of this sort are far different in nature and purpose from the ordinary commercial agreement. They are in effect a compact of self-government. As pointed out in United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 580–581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409:

> "Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement. Many of the specific practices which underlie the agreement may be unknown, except in hazy form, even to the negotiators."

Mr. Justice Brennan, concurring in American and Warrior, supra, at page 570, 80 S.Ct. at page 1364, states:

> "Words in a collective bargaining agreement, rightly viewed by the Court to be the charter instrument of a system of industrial self-government, like words in a statute, are to be understood only by reference to the background which gave rise to their inclusion. The Court therefore avoids the prescription of inflexible rules for the enforcement of arbitration promises. Guidance is given by identifying the various considerations which a court should take into account when construing a particular clause—considerations of the milieu in which the clause is negotiated and of the national labor policy."

We conclude that the parol evidence rule does not apply here to preclude examination of the bargaining history upon the question of the arbitrability of this dispute.

■ We now reach the heart of the problem. Appellee objected to introduction of evidence of bargaining history upon the ground that it went to the merits of the underlying dispute between the parties, an area forbidden to the court and exclusively the province of the arbitrator under the American and Warrior cases, supra. The district court apparently agreed for it ruled that those cases controlled the decision here.

In this respect in American the Supreme Court states at page 569, 80 S.Ct. at page 1347:

> "When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal."

In Warrior the Supreme Court states at page 585, 80 S.Ct. at page 1354:

> "Since any attempt by a court to infer such a purpose [to exclude a claim from arbitration] necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the

substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."

But it is clear from language in these very cases that it remains for the court, and not the arbitrator, to ascertain the extent of the parties' agreement to submit to arbitration.

In Warrior the Supreme Court states at page 582, 80 S.Ct. at page 1353:

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

Mr. Justice Brennan, concurring, states at pages 570–571, 80 S.Ct. at page 1364:

"To be sure, since arbitration is a creature of contract, a court must always inquire, when a party seeks to invoke its aid to force a reluctant party to the arbitration table, whether the parties have agreed to arbitrate the particular dispute. In this sense, the question of whether a dispute is 'arbitrable' is inescapably for the court."

The problem then is whether the question of arbitrability can be reached by the court without trespassing upon the forbidden ground of the merits.[2]

There can be little doubt that in cases such as Warrior and the case at bar a determination upon the merits will affect the question of arbitrability and vice versa. But we do not apprehend that this almost inevitable interlocking of is-

sues results in ousting the courts from any inquiry beyond the bare written words themselves.

The question, as we view it, is simply whether judicial construction of the arbitrability clause would require that the underlying dispute be first resolved in order to determine whether it is subject to arbitration.

In the case before us the underlying dispute is as to the company's right to resort as it did to disciplinary suspension.

Let us suppose (reverting to appellant's first contention) that the rationale of appellant is as follows: (1) the arbitration agreement is limited to the provisions of the contract; (2) bargaining history demonstrates the understanding of the parties that the company may resort to such discipline and the union has been unsuccessful in its efforts to secure a contract provision to the contrary; (3) therefore, such disputes are not within the "provisions" of the contract and therefore are not subject to arbitration.

Clearly, under such rationale, the reaching of *its* question by the court requires a preliminary examination into the *arbitrator's* area and a determination in that area.

Such was the case in Warrior. There the underlying dispute was as to whether the parties had agreed that the company might contract with others for the performance of work previously performed by the company's employees. The company contended that there was an understanding that this was permissible and that its judgment upon the question was a "function of management"; that the agreement expressly excluded "functions of management" from arbitration. We learn from Mr. Justice Whittaker's dissent that the bargaining history there

2. Compare Local No. 725, International Union of Operating Engineers v. Standard Oil Co. of Indiana, D.C.N.Dakota, 1960, 186 F.Supp. 895, with Association of Westinghouse Salaried Employees v. Westinghouse Electric Co., 3 Cir., 1960, 283 F.2d 93, and International Chemical Workers Union, Local No. 19 v. Jefferson Lake Sulphur Co., S.D., Texas, 1961, 197 F.Supp. 155, and Maryland Telephone Union v. Chesapeake & Potomac Telephone Co., D.C.Maryland, 1960, 187 F.Supp. 101.

taken into consideration by the lower courts related to bargaining upon the underlying issue itself. There was evidence that the union had unsuccessfully attempted to secure an agreement that the company would not contract work out.

Thus, before the court could find that the dispute was excluded from arbitration, it was necessary to determine whether the company had retained this disputed right as a function of management: the merits of the underlying dispute itself.

Let us suppose that in Warrior the evidence of bargaining history was to the effect that the parties had at the bargaining table reached an understanding that disputes relating to the manner in which the company contracted work out would not be subject to arbitration. Under these circumstances the decision, in our view, would have been quite different.

Appellant contends that the case at bar is of this nature and it would appear that this is so.

The tendered evidence of bargaining history here does not disclose bargaining upon the underlying issue: appellant's right to resort to disciplinary suspension. It discloses instead bargaining give-and-take upon three proposed provisions: a no-strike clause, a union shop clause and an arbitration clause; with the ultimate result that the first two were not included while the last was included in its present form. The history discloses that the union unsuccessfully attempted to secure a provision expressly *including* disputes relating to disciplinary suspension within the reach of the arbitration clause.

This evidence then went to the judicial issue and not to the merits. It was error to exclude it from consideration.

Appellee contends that even were such evidence taken into consideration it is inconclusive and fails to meet the standard imposed by Warrior, where the Supreme Court, at pages 584 and 585, 80 S.Ct. at page 1354, states:

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail * * *."

Whether the evidence meets this test is, we feel, a question which should first be resolved by the district court.

Reversed and remanded for new trial.