Glenn **BECK; Kenneth Cannady; Louis Cordisco; John Hazlinsky; Terrence Kelly; Stanley Konopka; Anthony Letuinsky; Leonard Poslusny; Albert Puskaric; John Slane; Matilda Gricar, administratrix for Frank Gricar; United Steelworkers of America, AFL–CIO: CLC; United Steelworkers of America, Local Union No. 1142.**

v.

**RELIANCE STEEL PRODUCTS COMPANY.**

Appeal of **UNITED STEELWORKERS OF AMERICA, AFL–CIO:CLC and United Steelworkers of America, Local Union No. 1142.**

No. 88–3332.

United States Court of Appeals, Third Circuit.

Argued Oct. 6, 1988.

Decided Oct. 28, 1988.

William T. Payne (argued), Frank J. Lucchino, Grogan, Graffam, McGinley, Solomon & Lucchino, Bernard Kleiman, Pittsburgh, Pa., for Appellants.

Michael F. Kraemer (argued), Steven J. Cooperstein, White and Williams, Philadelphia, Pa., for appellee.

Before HIGGINBOTHAM, MANSMANN and GREENBERG, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter is before the court on appeal from an order for summary judgment entered in the district court on April 28, 1988, in this action brought by appellant United Steelworkers of America, Local Union No. 1142, to compel appellee Reliance Steel Products Company to arbitrate a grievance. The district court had jurisdiction under 29 U.S.C. § 185(a). The order for summary judgment was a final order denying arbitration and thus we have jurisdiction under 28 U.S.C. § 1291.

The germane facts are as follows. Reliance owned and operated a manufacturing plant in McKeesport, Pennsylvania, at which the production and maintenance workers were represented by Local 1142. Between 1977 and 1979, Reliance laid off between 75 and 90 employees represented by Local 1142, causing Local 1142 to file a grievance seeking severance pay in accordance with a 1978 collective bargaining agreement. On November 3, 1980, the grievance was settled when Local 1142 and Reliance extended the agreement for three years in a short handwritten agreement which provided, among other things, that:

All pending grievances ... shall be dropped by the union. Provided, the union retains the right to claim & grieve severance pay for employees laid off after the date of this agreement.

On November 8, 1980, the local and Reliance entered into a new formal collective bargaining agreement for the new three-year period. In 1981 three additional employees were laid off and in 1983 the plant

was closed and the remaining employees were terminated.

Thereafter, Local 1142 sought to arbitrate a claim for severance pay for the employees working at the time of the closing, but then terminated, as well as those then on layoff.[1] Two arbitrators were selected, one to hear claims for employees laid off prior to November 1980 and one to consider claims for employees terminated in 1983. These designations seem to have been incomplete as no provision was made for an arbitrator to consider claims for the employees laid off in 1981. Local 1142 subsequently canceled the arbitration hearing for claims for the employees laid off before November 1980. It asserted, however, that the arbitrator for the claims for the 1983 terminations could consider claims for employees laid off before November 1980 and during 1981, as it contended that the plant closing terminated the employment of the employees laid off earlier, thus entitling them to severance pay. The arbitrator, however, ruled that he was authorized by the parties to consider only claims for persons still employed in 1983. Substantively, he agreed with Local 1142's contentions regarding the 1983 terminations and he thus awarded severance pay with interest to a total of 18 employees terminated in 1983, ten who were working until the closing and eight laid off earlier in the year. When Reliance rejected Local 1142's subsequent renewed demand that it arbitrate the claims for the employees laid off before 1983, Local 1142 brought this action to compel it to submit the claims to arbitration.[2]

Reliance and the Local 1142 filed cross-motions for summary judgment.[3] The matter was referred to a magistrate who in his report and recommendation indicated that while the courts favor arbitration, inasmuch as Local 1142 had "dropped" the grievances pending on November 3, 1980, there was "no basis for compelling arbitration." Thus, he recommended that a summary judgment should be granted to Reliance. The magistrate made no reference to the claims on behalf of employees laid off during 1981. Local 1142 filed objections to the report and recommendation, contending that an arbitrator should determine the effect of the November 3, 1980 agreement, as the November 8, 1980 collective bargaining agreement contains a broad arbitration clause. The district judge, however, on April 28, 1988, entered an order adopting the magistrate's report and recommendation and this appeal ensued.[4]

The contentions of the parties on this appeal are not complicated. Local 1142 contends that the broad grievance provisions of the November 8, 1980 collective bargaining agreement, culminating in binding arbitration, which provide for resolution of disputes involving an interpretation or application of, or compliance with, the provisions of the agreement relating to wages or other conditions of employment, govern the claims which it advances. Local 1142 further argues that arbitration is favored, the function of the court is limited to determining whether the contract provides for arbitration of the dispute, and any defense based on the November 3, 1980 settlement agreement relates to procedural arbitrability which can only be considered by the arbitrator. Local 1142 also points out that Reliance now sets forth no defense to arbitration of claims of employees laid

1. Not all of the employees covered by the dropped grievance were covered by the new claim, as some had their service broken by refusing to accept recall.

2. Certain employees were also plaintiffs in this matter, having filed a count under the Employee Retirement Income Security Act, 29 U.S.C. § 1132. This ERISA count was dismissed in the district court and no appeal has been taken from the dismissal. Count one was the ERISA count and count two involved the claim for arbitration which we now consider.

3. Actually, Reliance moved to dismiss the complaint but its motion was treated as a motion for summary judgment. See Fed.R.Civ.P. 12(b).

4. Our standard of review is plenary as we are concerned with the application of legal precepts. *United States v. Adams,* 759 F.2d 1099, 1106 (3d Cir.), *cert. denied,* 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236, 321 (1985); *Ram Construction Co. v. American States Ins. Co.,* 749 F.2d 1049, 1052–53 (3d Cir.1984).

off in 1981.[5]

Reliance, though not denying that the November 8, 1980 collective bargaining agreement contains a broad grievance procedure culminating in arbitration, contends that the district court properly determined the arbitrability of claims from the pre-contract layoffs, *i.e.*, those before November 8, 1980, and correctly concluded that the November 3, 1980 settlement agreement removed these claims from arbitration. Reliance seems to advance no basis on this appeal to avoid arbitration of claims for employees laid off in 1981, though it asserted in the district court that those claims were barred as Local 1142 waived them by canceling the arbitration hearing. It additionally asserted in the district court that the arbitration award for the 1983 claims had the preclusive effect of barring claims for employees laid off earlier but does not now make that contention.

■ The law governing this dispute is quite familiar and was recently restated by the Supreme Court in *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), a case in which the Court considered whether a court asked to order arbitration of a grievance filed under a collective bargaining agreement must first determine that the parties intended to arbitrate the dispute or may leave that determination to the arbitrator. 475 U.S. at 644, 106 S.Ct. at 1416. The Court, citing the famous *Steelworkers Trilogy*, [6] reiterated the following principles. First, as arbitration is a matter of contract, a party cannot be required to arbitrate any dispute which it has not agreed to submit to arbitration. Second, the question of arbitrability, *i.e.*, whether a collective-bargaining agreement creates a duty for the parties to arbitrate a particular grievance, is undeniably an issue for judicial determination unless the parties clearly and unmistakably provide that an arbitrator will decide the issue. Third, a court in deciding whether the parties have agreed to submit a particular grievance to arbitration is not to rule on the potential merits of the underlying claims even if a party's position appears frivolous. Fourth, when a contract contains an arbitration clause, there is a presumption of arbitrability of a grievance so that an order to arbitrate a grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. 475 U.S. at 648–49, 106 S.Ct. at 1418–19. *See also Morristown Daily Record, Inc. v. Graphic Communications Union*, 832 F.2d 31, 33 (3d Cir.1987).

■ In considering the merits of this appeal, we preliminarily observe that it is difficult to understand how the settlement agreement could bar claims for the few employees laid off after November 3, 1980, but before 1983, as the agreement preserved Local 1142's right to "claim & grieve severance pay" for employees laid off after November 3, 1980.[7] There is, however, a more far-reaching flaw in Reliance's argument. The November 3, 1980 settlement agreement, though providing that pending grievances would be dropped, did not exclude claims on behalf of employees laid off before its execution from arbitration. It is one thing to say that a claim for an employee is "dropped" and something else to say that an arbitrator may not entertain a new claim asserted on his behalf. Thus, while it is conceivable that by

---

5. Additionally, Local 1142 asserts that the November 3, 1980 agreement was not executed as required by its constitution to limit a right to arbitrate. We do not pass on that issue as the agreement by its terms does not bar arbitration. Our result is without prejudice to the rights of either party to make such arguments regarding that agreement to the arbitrator as it deems appropriate.

6. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

7. It appears that almost all of the employees affected by this appeal were laid off before November 3, 1980. We are not concerned with employees who worked until 1983 as their claims have been arbitrated.

reason of the November 3, 1980 agreement the arbitrator may conclude that claims for severance pay for employees previously laid off are barred, even though Local 1142 ties the claims to the 1983 closing,[8] inasmuch as the underlying subject matter of the grievance is arbitrable, the entire dispute must be resolved by him. *Chauffeurs, Teamsters and Helpers v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1093-94 (3d Cir.1980).

A comparison of two of our cases, *General Warehousemen and Employees v. Joseph Horne Co.*, 527 F.2d 745 (3d Cir.1975), and *Controlled Sanitation Corp. v. District 128*, 524 F.2d 1324 (3d Cir.1955), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976), is instructive. The collective bargaining agreement in *General Warehousemen* included an arbitration provision that occurrences prior to the execution date of the agreement "shall not be subject to arbitration" without the employer's consent. The district court nevertheless required the employer, which had not consented to do so, to arbitrate a pre-contract grievance as it held that the company had concealed material facts relating to the claim when the agreement was executed. We found no basis in the record for that finding and thus we reversed as the agreement clearly excluded the dispute from arbitration. The contractual language used in the *General Warehousemen* contract shows how claims may be excluded from arbitration and not merely "dropped." On the other hand, in *Controlled Sanitation Corp.* we held that the employer was obliged to arbitrate both the underlying dispute and the defense to arbitration which it advanced that the union had totally repudiated the contract containing the arbitration clause. If anything, the appeal now before us presents a stronger case for arbitration than that in *Controlled Sanitation Corp.*, inasmuch as a colorable argument may be made that if a party repudiates a contract it is no longer treating it as effective and thus may make no claim for arbitration under it. *See also International Union v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972).

Cases from other circuits have dealt with situations similar to that here. In *Employees Protective Ass'n v. Norfolk and Western Ry. Co.*, 571 F.2d 185 (4th Cir.1977), in response to the railroad's request to the National Mediation Board to take jurisdiction over a seniority dispute and to assign a neutral arbitrator, a special board of adjustment was created. The plaintiff labor association then brought an action to set aside the award made by the special board on the ground that the issue in dispute had been resolved by an earlier agreement, the so-called Gilbert–Saunders agreement. The railroad, however, denied that there had been such an agreement. The district judge ruled in favor of the railroad as he was not convinced that the association established that there was an earlier agreement. The association appealed and the Court of Appeals affirmed, though on a different basis than stated by the district judge. The Court of Appeals said:

> Assuming that the evidence sustains the existence of the Gilbert–Saunders agreement, we do not concur with the Association as to the legal effect of that agreement. Its entire argument is based upon the premise that that agreement removed the entire issue of integration of seniority rosters of engineers from the scope of the arbitration clause. This understanding would not, and could not, do that, absent a modification of the arbitration clause itself, which is not even claimed.
>
> . . . .
>
> But the Association argues, the integration of seniority rosters was removed from the scope of both arbitration clauses by the Gilbert–Saunders agreement. Even if we assume that the parties did attempt to settle the issue, otherwise arbitrable, by agreement, any disagreement as to the existence or effect of that settlement agreement would itself be a matter for the arbitrator to decide. [*Id.* at 192, 193]

---

**8.** We, of course, express no opinion on this point.

*Local Union No. 370 v. Morrison-Knudsen Co.*, 786 F.2d 1356 (9th Cir.1986), is similar to *Employees Protective Ass'n v. Norfolk and Western Ry. Co.* In *Local Union No. 370*, the employer appealed from a summary judgment compelling it to arbitrate under a collective bargaining agreement a grievance arising in the aftermath of a state court action in which the employer claimed it had been making excess contributions to trust funds established for its employees' benefit. After the state court action was resolved by a settlement reducing the employer's obligation to make payments, the union claimed that the money saved should be paid to the employees. When the employer disagreed, the union brought an action to compel arbitration. The union obtained a summary judgment and the employer appealed, contending that the settlement reached in the state proceeding should be given preclusive effect. The Court of Appeals, however, affirmed, as the dispute was subject to arbitration so that the arbitrator would decide the effect to give to the settlement of the state court action.

*Employees Protective Ass'n* and *Local Union No. 370* are similar to our case. In both, as here, an arbitration clause plainly encompassed a dispute under the collective bargaining agreement and in both, as here, a party to the agreement resisted arbitration by relying on a separate understanding allegedly settling the controversy but not modifying the arbitration clause of the collective bargaining agreement. Thus, these cases support our result.

We recognize, of course, that this case was decided by the district court on cross-motions for summary judgment, a procedural posture which suggests that we remand the matter for trial. But in *Ram Construction Co. v. American States Ins. Co.*, 749 F.2d 1049 (3d Cir.1984), we pointed out that construction of a contract determines its legal operation, meaning its effect upon the action of courts and administrative officials, and thus differs from interpretation which is the ascertaining of the meaning of a contract and which re-

quires a finding of fact. *Id.* at 1052–53. Here the terms of the contract are unambiguous and consequently we are construing the contract and thus our review is plenary. *Ibid.* See also *Landtect Corp. v. State Mutual Life Assur. Co.*, 605 F.2d 75, 79–80 (3d Cir.1979). In these circumstances, there is no material fact in issue and thus there is no need for a substantive determination on remand. Therefore, we may make a complete disposition of the case. *See* 28 U.S.C. § 2106; *First Nat'l Bank v. Lincoln National Life Ins. Co.*, 824 F.2d 277, 281–82 (3d Cir.1987).

In view of the aforesaid, the order of April 28, 1988 will be reversed and the matter will be remanded to the district court for further proceedings consistent with this opinion and specifically ordering that the grievance be arbitrated.[9]

---

9. Nothing herein affects the summary judgment granted on the ERISA count.