In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1992

Air Line Pilots Association, International,
  and Craig A. Moffatt,

Plaintiffs-Appellants,

v.

Midwest Express Airlines, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00 C 718--Thomas J. Curran, Judge.

Argued November 2, 2001--Decided February 6, 2002


  Before Posner, Ripple, and Evans, Circuit
Judges.

  Posner, Circuit Judge.  This appeal by a
pilot and his union from a grant of
summary judgment to his former employer
presents questions concerning arbitration
and contract law. Midwest first fired
Moffatt in 1999 because he failed a
proficiency test. Represented by the
union (ALPA), which had an informal
arrangement with Midwest, Moffatt invoked
Midwest's grievance procedure. The
grievance was settled by an agreement,
signed by Midwest, Moffatt, and the
union, reinstating Moffatt and giving him
one last chance to demonstrate his
proficiency. The agreement provided that
if Moffatt "fails any part of the above
training or proficiency check ride, his
employment will be terminated
immediately, without recourse to filing
of a grievance, request for resolution
letter, claim, lawsuit or any other liti
gation."

  Several months later, Midwest and the
union entered into their first collective
bargaining agreement. It provides
multiple opportunities for crew members
to retake proficiency tests; states that
it "shall supersede and take precedence
over all agreements, supplemental
agreements, amendments and similar

related documents executed between [Midwest] and [ALPA] prior to the signing of this Agreement"; and contains both an integration clause and an arbitration clause. The arbitration clause requires arbitration of all "disputes between any employee covered by this Agreement and the Company growing out of grievances or out of interpretation or application of any of the terms of this Agreement."

Shortly afterward, Moffatt again failed a proficiency check and was fired pursuant to the "last chance" settlement agreement. The union filed a grievance with Midwest, claiming that the firing violated the "multiple opportunities" clause of the collective bargaining agreement. Midwest denied the grievance and asserted that it was not arbitrable, precipitating this suit by Moffatt and the union under the Railway Labor Act to compel arbitration. 45 U.S.C. sec. 153 First (p). The district judge dismissed the suit on the ground that the "last chance" agreement had not been superseded by the collective bargaining agreement and therefore the parties had not agreed to submit Moffatt's grievance to arbitration.

The question whether a dispute is arbitrable is usually for the court asked to order arbitration to decide. LittonFinancial Printing Division v. NLRB, 501 U.S. 190, 208 (1991); AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649, 651 (1986); Local 744, International Brotherhood of Teamsters v. Hinckley & Schmitt, Inc., 76 F.3d 162, 163 (7th Cir. 1996). (We say "usually" rather than "al ways" because the parties to a contract can if they wish assign the determination of the arbitrability of a dispute to an arbitrator--but then the question whether they have done that is for the court. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); Miller v. Flume, 139 F.3d 1130, 1133-34 (7th Cir. 1998); U.S. Postal Service v. American Postal Workers Union, AFL-CIO, 204 F.3d 523, 527 n. 1 (4th Cir. 2000).) The answer here should have been easy. The collective bargaining agreement between Midwest and ALPA contains an arbitration clause applicable to disputes arising from grievances based on the interpretation or application of the agreement, and the grievance that Moffatt

wants to arbitrate is based on an interpretation of the "multiple opportunities" provision of the agreement and also on an interpretation of the agreement as having superseded the earlier settlement agreement with its "last chance" language. No more is required to establish the arbitrability of the dispute. It is true but irrelevant that if the collective bargaining agreement does not supersede the settlement agreement, Moffatt's grievance lacks merit. Merit is for the arbitrators to decide, not the court. They must interpret the collective bargaining agreement to determine whether the "multiple opportunities" provision is applicable to Moffatt.

Granted, if that provision is inapplicable to Moffatt because the settlement agreement survived the making of the collective bargaining agreement and so barred him from filing a grievance, then the arbitration clause is also inapplicable to him. But when an arbitration clause is so broadly worded that it encompasses disputes over the scope or validity of the contract in which it is embedded, issues of the contract's scope or validity are for the arbitrators. This is true, the Supreme Court has held, even when the party opposing arbitration is prepared to prove that the contract containing the arbitration clause (as distinct from the clause itself) was procured by fraud. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967); see also Sphere Drake Ins. Ltd. v. All American Ins. Co., 256 F.3d 587, 590-91 (7th Cir. 2001). The arbitration clause in the collective bargaining agreement between Midwest and ALPA states that all issues concerning the interpretation and application of the agreement are for the arbitrators to decide, including therefore the applicability of the agreement to Moffatt's dispute with Midwest. Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 567, 569 (4th Cir. 1998); Beck v. Reliance Steel Products Co., 860 F.2d 576, 579-80 (3d Cir. 1988); Employees Protective Ass'n v. Norfolk & Western Ry., 571 F.2d 185, 193 (4th Cir. 1977). Were this not the rule, the scope of arbitration would be unduly curtailed; for even when arbitration is the parties' chosen method of resolving contractual disputes, the position

adopted by the district judge would require judges, not arbitrators, to resolve disputes over contractual provisions other than the arbitration clause itself (the clause that judges must interpret in order to perform their function of determining whether the dispute is arbitrable).

Disputes over the meaning of a written contract are ordinarily resolved by reference to the meaning of the contract as it would be gathered by a reader competent in English (if the contract is in English) and reasonably endowed with common sense. This "literalist" approach is desirable because it gives contracting parties the security of knowing that their contract will be interpreted in the event of a legal dispute to mean what it says, rather than being interpreted to mean what a judge or jury, perhaps misled by self-serving testimony by one of the parties, might think it should have said. Literalism has its pitfalls. A contract might seem clear only because the judicial reader didn't understand the commercial context of the contract--the nonstandard verbal usages current in the activity out of which the contract arose. But in such a case (the case of what is called "extrinsic ambiguity"), the party challenging the literal meaning must present objective evidence, not just his say-so, that the contract does not mean what it says. Rossetto v. Pabst Brewing Co., 217 F.3d 539, 542-43 (7th Cir. 2000); PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 614-15 (7th Cir. 1998); AM International, Inc. v. Graphic Management Associates, Inc., 44 F.3d 572, 575 (7th Cir. 1995); Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93, 94 n. 3 (3d Cir. 2001). We were following the literal approach when we said that the arbitration clause clearly covered the parties' dispute in this case, and we were right to do so because no objective evidence has been submitted that would suggest that the clause doesn't mean what it says.

Rather than leaving determination of the supersession issue to the arbitrator, the district judge made the determination himself. He should not have done so. But the plaintiffs, besides asking that the issue be referred to arbitration, challenge the district court's determination of the supersession issue,

in effect asking us to review that determination. This is a request, however irregular, to which Midwest cannot object, since it agrees with the district court that the issue is not arbitrable but of course recognizes that a district judge's interpretation of a contract is reviewable by the court of appeals. And so let us consider that interpretive issue.

The collective bargaining agreement states, in words that could not be clearer, that the agreement supersedes all previous agreements between Midwest and the union. The settlement agreement was such an agreement. The fact that it had an additional party, Moffatt, did not make it any less an agreement between Midwest and the union. Had it not been superseded, either of those parties, as well as Moffatt, could have sued to enforce it. Although the agreement contains a waiver by Moffatt, in Midwest's favor, of his right to file a grievance, the collective bargaining agreement superseded the agreement that contained the waiver and thus wiped it out. United States v. Baus, 834 F.2d 1114, 1126-27 (1st Cir. 1987).

Parties are sometimes allowed to make a binding agreement that their contract shall not be orally modifiable. E.g., Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction Corp., 258 F.3d 645, 649-50 (7th Cir. 2001), although the general rule is otherwise, Much v. Pacific Mutual Life Ins. Co., 266 F.3d 637, 644 n. 1 (7th Cir. 2001); Williams v. Jader Fuel Co., 944 F.2d 1388, 1395 (7th Cir. 1991). But they cannot make a binding agreement not to modify their contract by a writing. See Teer v. George A. Fuller Co., 30 F.2d 30, 32 (4th Cir. 1929); Beatty v. Guggenheim Exploration Co., 122 N.E. 378, 381 (N.Y. 1919) (Cardozo, J.). That would lock parties into a contract that both agree should be modified or terminated without liability. "Whenever two men con tract, no limitation self-imposed can destroy their power to contract again." Id. Midwest and ALPA contracted again. We need not decide whether, as Moffatt's exclusive bargaining representative, the union was empowered to waive any rights that the last-chance agreement conferred on him. He is not trying to enforce those rights. Only Midwest is trying to enforce the agreement, but it modified it by

entering into a subsequent agreement with inconsistent terms.

   Midwest argues that the negotiating history of the collective bargaining agreement shows that the settlement agreement was meant to be carved out of it. The collective bargaining agreement was actually negotiated before the settlement agreement, though signed after; and the union tried to incorporate the arbitration clause in the collective bargaining agreement in the settlement agreement. Midwest refused and proposed instead to include in the settlement agreement the grievance-waiver provision. The union and Moffatt accepted the proposal. But negotiating history is just what the parol evidence rule does not allow to be used to vary the terms of a written contract intended to be the final, integrated expression of the parties' deal. E.g., Herzog Contracting Corp. v. McGowen Corp., 976 F.2d 1062, 1070 (7th Cir. 1992); FDIC v. W.R. Grace & Co., 877 F.2d 614, 620 (7th Cir. 1989); Prentice v. UDC Advisory Services, Inc., 648 N.E.2d 146, 152 (Ill. App. 1995). And except in the Ninth Circuit (compare Pace v. Honolulu Disposal Service, Inc., 227 F.3d 1150, 1157-58 (9th Cir. 2000), with Pacific Northwest Bell Telephone Co. v. Communications Workers of America, 310 F.2d 244, 247 (9th Cir. 1962)), the parol evidence rule has been held to be fully applicable to collective bargaining agreements. Dugan v. Smerwick Sewerage Co., 142 F.3d 398, 404 (7th Cir. 1998); Merk v. Jewel Food Stores, 945 F.2d 889, 894-95 (7th Cir. 1991); Mohr v. Metro East Mfg. Co., 711 F.2d 69, 72 (7th Cir. 1983); Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund, 206 F.3d 680, 683 (6th Cir. 2000); Excel Corp. v. United Food & Commercial Workers International Union, Local 431, 102 F.3d 1464, 1468 (8th Cir. 1996); Clark v. Ryan, 818 F.2d 1102, 1105 (4th Cir. 1987).

   It is true that we and other courts have sometimes considered bargaining history in interpreting such agreements, see, e.g., Oil, Chemical & Atomic Workers International Union, Local 7-1 v. Amoco Oil Co.,  883 F.2d 581, 586-87 (7th Cir. 1989), but as far as we can tell, the parol evidence rule had not been argued to the court in those cases, or the collective bargaining agreements at issue

in them deemed integrated. Here there was an integration clause, showing that the collective bargaining agreement between Midwest and the union was indeed an integrated contract, though we add for completeness that the existence of such a clause is just one way of showing that a contract is integrated, that is, that it was intended to be the final expression of the parties' agreement, superseding any preliminary agreements. 2 E. Allan Farnsworth, Farnsworth on Contracts sec. 7.3, pp. 198-200 (1990).

Midwest points out finally that after the collective bargaining agreement was signed, Moffatt took (and failed) the proficiency test provided for in the settlement agreement. This implies, Midwest argues, that he believed the agreement remained in force. This is objective evidence of the parties' understanding of the meaning of the supersession clause of the collective bargaining agreement, because it does not depend on self-serving testimony of a party, cf. Bock v. Computer Associates International, Inc., 257 F.3d 700, 707 (7th Cir. 2001); Rossetto v. Pabst Brewing Co., supra, 217 F.3d at 546; indeed, it's undisputed that Moffatt took the test. Only it proves nothing. The collective bargaining agreement provides multiple but not unlimited opportunities to demonstrate proficiency. It does not waive proficiency, and so Moffatt's taking the test says nothing about whether he thought the settlement agreement or the collective bargaining agreement applicable; he would have had to take the test in either event.

The judgment is reversed with directions to order the parties to arbitrate Moffatt's grievance.


RIPPLE, Circuit Judge, concurring in part and dissenting in part.


A.

The basic principles that govern this case are straightforward. The federal courts serve a gatekeeper function in re lation to arbitration processes found in many collective bargaining agreements and

contracts. In Litton Financial Printing Division v. NLRB, 501 U.S. 190 (1991), the Supreme Court of the United States reiterated the general rule that the courts, rather than the arbitrator, must determine if the parties have agreed, through the terms of a collective bargaining agreement, to submit a particular dispute to arbitration. See Litton Fin. Printing Div., 501 U.S. at 208 (citing AT & T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 651 (1986)). The parties may avoid this default rule by contracting to permit the arbitrator, rather than the courts, to determine if a dispute falls within the scope of the arbitration clause. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). To do so, however, the parties must evidence in their agreement a clear and unmistakable intent to cede the arbitrability question to the arbitrator. See id. (citing AT & T Tech., Inc., 475 U.S. at 649). Even in this latter instance, the court retains authority to determine if the parties, in fact, have agreed to commit the question of arbitrability to the arbitrator. See id.

In this case, the collective bargaining agreement ("CBA") between the Air Line Pilots Association ("ALPA") and Midwest Express Airlines ("Midwest") contains an extremely broad arbitration clause:

The Board shall have jurisdiction over disputes between any employee covered by this Agreement and [Midwest] growing out of grievances or out of interpretation or application of any of the terms of this Agreement.

Appellants' Appendix at 16. When a court confronts such a broad arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT & T Tech., Inc., 475 U.S. at 650 (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

The plain wording of the arbitration clause encompasses Mr. Moffatt's grievance against Midwest; he is an employee of the airline covered by the

CBA who seeks an interpretation of the terms of the agreement. Given the expansive scope of the arbitration clause, it cannot be said with positive assurance that the preexisting settlement agreement, entered into prior to the enactment of the CBA, precludes necessarily arbitration of Mr. Moffatt's grievance. The panel therefore correctly concludes that the district court should have ordered Midwest to arbitrate Mr.Moffatt's grievance.

B.

   Although I agree with the majority that this dispute is subject to arbitration, I cannot agree that the procedural posture of this case permits us to reach, nevertheless, the supersession issue that is central to the merits of Mr. Moffatt's grievance. Once the court concludes that the parties have agreed to arbitrate a particular dispute, "it is [then] for the arbitrator to determinate the relative merits of the parties' substantive interpretations of the [CBA]." AT & T Tech., Inc., 475 U.S. at 651. In its brief to this court, the ALPA stressed repeatedly that the district court lacked the authority to interpret the CBA's supersession clause. To the extent the union addressed the interpretation of this provision in its brief before this court, it only did so because the district court had reached the issue and because Midwest, defending the district court's conclusion, submitted that the court had to address this issue in order to determine if Mr. Moffatt's grievance was arbitrable.

   Under the panel's own analysis, this issue is for the arbitrator. Because we have concluded that the plain terms of the arbitration clause require arbitration of this issue, we ought to refrain from construing the supersession clause.

   In my view, the panel's decision to construe the supersession clause treads on the prerogative of the arbitrator and deprives the parties of the determination for which they bargained. Although the panel majority takes the view that the plain language of the supersession clause makes clear that the CBA supercedes the earlier "last chance" settlement agreement, it is not at all clear that an

arbitrator necessarily would reach the same result. The parties do not dispute that, by virtue of the supersession clause, the CBA takes precedence over "all agreements, supplemental agreements, amendments and similar related documents executed between [Midwest] and [ALPA] prior to the signing of this Agreement." Appellants' Appendix at 20. Rather, Midwest and the ALPA dispute the precise meaning of these terms in the supersession clause. More precisely, the parties differ as to whether the terms of this provision encompass Mr. Moffatt's settlement agreement. Certainly the arbitrator, in engaging in contract interpretation, would have been within his rights to deem the meaning of these terms sufficiently ambiguous to consider extrinsic evidence--including the oral or written negotiations used to form this CBA--to interpret this provision. See Jasper Cabinet Co. v. United Steelworkers of America, 77 F.3d 1025, 1030-31 (7th Cir. 1996) (noting that it was permissible for arbitrator, in an effort to shed light on ambiguous terms of CBA, to consider bargaining history of agreement); Johnson Controls, Inc., Sys. & Servs. Div. v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Indus. of the United States & Canada, 39 F.3d 821, 824-25 (7th Cir. 1994) (approving arbitrator's use of bargaining history to elucidate the meaning of ambiguous terms of a CBA). See also Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992); Manville Forest Prods. Corp. v. United Paperworkers Int'l Union, 831 F.2d 72, 75 (5th Cir. 1987). Although the arbitrator's award must "draw[ ] its essence from the collective bargaining agreement," United Steelworkers of America v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960), he may "look for guidance from many sources." Id. The principle simply recognizes that

The collective bargaining agreement . . . is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . . It calls into being a new common law--the common law of a particular industry or of a particular plant. . . . Gaps may be left to be filled in by reference to the practices of the particular industry and of the

various shops covered by the agreement. . . . . The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law--the practices of the industry and the shop--is equally a part of the collective bargaining agreement although not expressed in it.

Warrior & Gulf Navigation Co., 363 U.S. at 578-82. Parties agree to arbitrate so that a specialist, someone intimately familiar with their industry, may resolve disputes arising under their collective bargaining agreement. See Sphere Drake Ins. Ltd. v. All American Ins. Co., 256 F.3d 587, 592 (7th Cir. 2001). Here, the panel majority, having just concluded that the parties' agreement reserves the construction of the supersession clause to the arbitrator, nevertheless deprives the parties of this benefit. From this portion of today's decision, I respectfully dissent.