Edward L. SHRINER, Plaintiff–
Appellee,

v.

SIGNAL FINANCE COMPANY, an
Ohio Corporation and FirstMerit
Bank, a National Banking Associa-
tion, Defendants–Appellants.

No. 02–1846.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 2003.

Decided Dec. 11, 2003.

Mary F. Schmid, Stewart & Irwin, In-
dianapolis, IN, for Plaintiff–Appellee.

Sallie Conley Lux, Brouse & McDowell,
Akron, OH, for Defendant–Appellant.

Before RIPPLE, ROVNER, and
EVANS, Circuit Judge.

## ORDER

On June 5, 2001, Edward Shriner filed a
complaint against Signal Finance Compa-
ny and FirstMerit Bank, N.A. (collectively
"Signal Finance") to enforce the terms of
two contracts. Signal Finance moved to
stay the district court proceedings and to
compel arbitration pursuant to 9 U.S.C.
§§ 3 and 4. The district court denied the
motion, and Signal Finance timely appeal-
ed. We now affirm the judgment of the
district court.

## I

## BACKGROUND

A. Facts

From April 1997 to June 1, 1998, Mr.
Shriner served as president of Signal Fi-
nance under a consulting agreement. Mr.
Shriner and Signal Finance then entered
into an employment agreement ("Employ-

ment Agreement"), which became effective on June 1, 1998. Under the Employment Agreement, Mr. Shriner agreed to continue to serve as president. The Employment Agreement contained an arbitration clause that provided, in part:

> [W]ith respect to any matter arising out of this Agreement (including the amounts of any payments hereunder) which cannot be settled amicably by the parties hereto, will be settled by arbitration in Wooster, Ohio, in accordance with the Rules of Arbitration of the American Arbitration Association.

R.1, Employment Agreement at 8.

On February 12, 1999, FirstMerit purchased Signal Finance's parent corporation, Signal Corporation, and made it known that it would immediately sell Signal Finance to Third Federal Savings and Loan ("Third Federal"). All parties intended that Mr. Shriner would remain president of Signal Finance after the sale, but under the employment of Third Federal. Therefore, on February 5, 1999, FirstMerit, Signal Corporation and Mr. Shriner executed a written severance agreement terminating Mr. Shriner's Employment Agreement. At that time, Mr. Shriner received the termination pay and bonus required by the Employment Agreement, approximately $474,000. At FirstMerit's request, Mr. Shriner remained president of Signal Finance as an at-will employee without a formal agreement governing the relationship.

In May 1999, negotiations between FirstMerit and Third Federal ended without a sale of Signal Finance. At that time, Mr. Shriner's independent company, Carmel Capital Management, L.L.C. ("Carmel Capital"), expressed an interest in Signal Finance. On July 23, 1999, Carmel Capital, Signal Finance and FirstMerit entered into a written agreement entitled "Indication of Interest to Acquire Signal Finance Company" ("Indication of Interest"). The Indication of Interest did not contain an arbitration clause. Nevertheless, it did address Mr. Shriner's employment:

> Shriner ... is and has been since June 1, 1999 an employee at will and will continue to be compensated and receive employee benefits at the same level, in the same manner and under the same terms and conditions as provided in the Employment Agreement between Signal and Shriner dated June 1, 1998.... In the event that the Transaction is consummated, the non-competition and non-solicitation provisions of such Employment Agreement shall terminate and be of no further force or effect...."

R.1, Indication of Interest at 6. Although the proposed transaction with Carmel Capital did not occur, Mr. Shriner continued to serve as president until March 20, 2000, when FirstMerit and Signal Finance terminated Mr. Shriner's employment without cause.

### B. District Court Proceedings

Mr. Shriner filed a four-count complaint against Signal Finance and FirstMerit. Count I sought a declaratory judgment that the Indication of Interest reinstated the Employment Agreement in its entirety. Counts II through IV alleged various rights to recovery under the Employment Agreement; specifically Count II alleged a breach of contract, Count III sought damages based on a theory of promissory estoppel, and Count IV alleged a right to relief for violations of the Indiana wage statute.

Signal Finance and FirstMerit responded by answering the complaint and also by filing a motion to stay proceedings and compel arbitration. They maintained that Mr. Shriner's bases for relief all arose under the Employment Agreement and were therefore arbitrable disputes.

Mr. Shriner acknowledged to the district court that, if the court resolved Count I of his complaint—the declaratory judgment action—in his favor, the remaining counts were subject to arbitration under the Employment Agreement. However, the initial determination of whether the Indication of Interest reinstated the Employment Agreement, including the arbitration clause, was a question that could not be submitted to arbitration, but must be resolved by the district court in the first instance.

The district court denied Signal Finance and First Merit's motion to stay the proceedings and compel arbitration. See R.28 at 6–7. In its order, the district court stated:

> It is true that Shriner's breach of contract, promissory estoppel, and wage payment claims are all based upon the assumption that the Indication of Interest reinstated the terms of the Employment Agreement. Shriner candidly admits that if the Indication of Interest did not reinstate those terms, he has no case. He also concedes that if the Indication of Interest did reinstate the terms and conditions of the Employment Agreement, including the provision for arbitration, he would be required to submit his claims to arbitration.
>
> It appears that the initial issues to be decided are whether the Indication of Interest is valid, and if so, whether it reinstated the terms and conditions of the Employment Agreement. This is a matter of contract interpretation to be decided by the Court. These issues do not "arise out of" the Employment Agreement, so there is no basis for invoking the arbitration clause of that agreement at this time. Moreover, nothing in the Indication of Interest requires these threshold issues to be arbitrated; indeed, the issue of arbitration does not arise unless and until the Court determines that the Indication of Interest reinstated the terms and conditions of the Employment Agreement. Accordingly, the Court denies Defendants' request to stay these proceedings and to compel arbitration.

R.28 at 6–7. The court then invited the parties to file appropriate motions and/or briefs addressing the validity of the Indication of Interest and whether it reinstated the terms of the Employment Agreement. See id. at 7. Signal Finance and FirstMerit appealed the district court's denial of their motion.

## II

## DISCUSSION [1]

We begin by noting that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.' " *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting *Steelworkers v. Warri-*

---

1. In the jurisdictional statement of their opening brief, the defendants argue that the district court did not have jurisdiction because there was not $75,000 or more at issue with respect to the declaratory judgment claim. See Appellant's Br. at 1. Mr. Shriner responded that, under *We Care Hair Development v. Engen*, 180 F.3d 838, 841 (7th Cir.1999), the amount in controversy in an action to compel arbitration is determined by the underlying cause of action to be arbitrated. See Appellee's Br. at 2. In this case, Mr. Shriner claims a right to at least $360,000 arising from the breach of the reinstated Employment Agreement. See id. Signal Finance does not counter this assertion in its reply brief, and, indeed, Signal Finance's counsel appeared to concede jurisdiction. Based on our decision in *We Care Hair*, we believe that the amount in controversy requirement was met in this case and, therefore, that the district court properly exercised jurisdiction over this matter.

or & *Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); *see Rosenblum v. Travelbyus.com Ltd.,* 299 F.3d 657, 662 (7th Cir.2002). To determine whether a dispute is governed by an arbitration clause, federal courts apply state law contract formation principles. *See Rosenblum,* 299 F.3d at 662. In this case, the contract which Mr. Shriner alleges reinstated his employment provisions contains a choice of law clause selecting Indiana as the governing body of law. *See* R.1, Indication of Interest at 7. We review de novo a district court's determination of whether a contract dispute is subject to arbitration pursuant to a written agreement. *See Tinder v. Pinkerton Sec.,* 305 F.3d 728, 733 (7th Cir.2002).

Although the Supreme Court has identified a strong federal policy in favor of arbitration, the Court has noted a significant exception: "The question of whether the parties have submitted a particular dispute to arbitration, *i.e.,* the *'question of arbitrability,'* is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam,* 537 U.S. at 82, 123 S.Ct. 588 (quoting *AT & T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (emphasis added)); *see Int'l Union of Operating Eng'rs, Local Union 965–965A–965B–965C–965RA v. Associated Gen. Contractors of Ill.,* 845 F.2d 704, 706 (7th Cir.1988) (stating that "question of arbitrability is a question of law for the judge to decide"); *Mislenkov v. Accurate Metal Detinning, Inc.,* 743 N.E.2d 286, 289 (Ind.Ct.App.2001) (commenting that "parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication").

The parties forward rather unique positions before this court concerning the arbitrability of Mr. Shriner's claims. As noted above, Mr. Shriner maintains that the Indication of Interest revived his entire Employment Agreement with Signal Finance, including the arbitration provision as well as his right to severance pay, which Mr. Shriner already had received when Signal Finance was purchased by FirstMerit. However, Mr. Shriner continues, the initial question of whether the Indication of Interest revived the Employment Agreement, including the arbitration provision, is a question for the court, not an arbitrator.

Signal Finance, on the other hand, maintains that, despite the traditional rule that the issue of arbitrability is for the judge to decide absent a clear and unmistakable intent to the contrary, *see Howsam,* 537 U.S. at 83, 123 S.Ct. 588; *Int'l Union of Operating Eng'rs,* 845 F.2d at 706; *Mislenkov,* 743 N.E.2d at 289, the critical issue of the effect of the Indication of Interest should be submitted to arbitration although that document contains no reference to the determination of arbitrability, or for that matter, even a general arbitration provision. We decline this invitation and conclude that the district court was correct in determining that this issue of contract interpretation is to be decided by the court. *See* R.28 at 6.

Our recent decision in *Rosenblum v. Travelbyus.com Ltd.,* 299 F.3d 657 (7th Cir.2002), confirms our view that the issue of the effect of the Indication of Interest must be determined by the court in this case. In *Rosenblum,* the first contract, an employment agreement, contained a broad arbitration clause and the second contract, an acquisition agreement, did not mandate arbitration. The plaintiff sued under the second contract, which entitled him to cash and stock in exchange for control of his company; in response, the defendant sought to compel arbitration. With re-

spect to the question of arbitrability, we explained that there are two possible scenarios mandating an obligation to arbitrate: 1) If the "arbitration clause is broad enough, by its own terms, to encompass disputes under the [later contract]," or 2) if the later agreement "incorporates the Employment Agreement by reference." *Rosenblum*, 299 F.3d at 662. Before applying our two-step analysis, we noted that, although the acquisition agreement mentioned the employment agreement and the contracts were executed on the same day, both contracts were "complete on their own." *Id.* at 663. Looking then to the breadth of the arbitration agreement, we held that, because "[t]he arbitration clause applies, by its terms, to 'any matter in dispute under or relating to *this* Agreement,'" referring to the Employment Agreement, "[i]t simply does not purport to cover the acquisition issues that form the basis of Mr. Rosenblum's claims...." *Id.* at 664. Similarly, we held that the mere fact that the Employment Agreement referenced the Acquisition Agreement did not evidence an intention to make the Acquisition Agreement part of the Employment Agreement. We therefore concluded that the arbitration clause addressing the employment relationship did not require arbitration of disputes arising under the acquisition agreement.

Applying *Rosenblum* to the present case, we first note that there is no question that the Employment Agreement and the Indication of Interest are distinct contractual arrangements. Here, the parties to the two agreements are different; Signal Finance and Mr. Shriner executed the Employment Agreement, whereas Signal Finance, FirstMerit and Carmel Capital were signatories of the Indication of Interest. Additionally, the documents were signed at different times: the Employment Agreement on June 1, 1998, and the Indication of Interest on July 23, 1999.

Most importantly, the contracts dealt with distinct subject matter. The Employment Agreement governed Mr. Shriner's terms of employment and his compensation, while the purpose of the Indication of Interest was to govern Signal Finance's proposed sale to Carmel Capital. Significantly, in the Employment Agreement the parties included an arbitration clause, while the Indication of Interest contained none. Consequently, as in *Rosenblum*, the Indication of Interest and the Employment Agreement clearly were separate contracts, complete in themselves, and we therefore apply *Rosenblum*'s analysis to discern whether the parties manifested an intent to arbitrate a dispute arising out of the Indication of Interest.

Under the first prong of *Rosenblum*, the court must determine whether the arbitration clause of the Employment Contract is broad enough to encompass disputes under the later Acquisition Agreement. *See id.* at 662. In *Mislenkov*, the Indiana Court of Appeals considered the scope of an analogous arbitration clause, which covered "[a]ny controversy or claim arising out of or relating to this Agreement." *Id.* at 290. The court found that the provision governed disputes arising out of the agreement, not the parties' employment relationship in general. *See id.* Therefore, the court concluded that the parties had not agreed to arbitrate claims arising before the employment agreement was signed. *See id.* at 290–91.

In Mr. Shriner's case, the language of the arbitration clause governs "[a]ny disputes between the parties with respect to any matter arising out of this Agreement [the Employment Agreement]." R.1, Employment Agreement at 8. This language is almost exactly the same as that in *Mislenkov*, which indicates that Indiana law would not accept Mr. Shriner's proposed expansion of an arbitration clause con-

tained in an employment agreement, which was operable for a finite period of time, to his entire employment relationship. Once the Employment Agreement was terminated on February 5, 1999, the arbitration clause ceased to have any force and does not continue to govern any later negotiated employment relationship.

*Rosenblum*'s second approach asks whether the later contract incorporates the first and the arbitration clause contained therein. Indiana law recognizes the doctrine of incorporation by reference. The Indiana Court of Appeals recently stated that "[w]here a written contract refers to another instrument and makes the terms and conditions of such other instrument a part of it, the two will be construed together as the agreement of the parties." *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.*, 695 N.E.2d 1030, 1036 (Ind.Ct. App.1998). However, the doctrine is further refined by permitting partial incorporation. "[I]f in a written contract, a reference is made to another writing for a

particularly designated purpose, the other writing becomes a part of the contract only for the purpose specified, and is foreign to the contract for all purposes other than the one specified." *Id.; see* 6 Indiana Law Encyclopedia *Contracts* § 73, at 212 (citing *I.C.C. Protective* and describing partial incorporation).

In this case, the Indication of Interest states that Mr. Shriner will be "compensated and receive employee benefits at the same level, in the same manner and under the same terms and conditions as provided in the Employment Agreement between Signal and Shriner dated June 1, 1998...." R.28 at 3. This refers to the earlier Employment Agreement to define only "compensation" and "employee benefits"; it cannot be read to indicate clearly a desire to arbitrate all agreements arising under the Indication of Interest. Although there may be partial incorporation in this case, there is no indication of an intention to incorporate the arbitration provision in the Indication of Interest.[2]

---

**2.** The defendants point to *Air Line Pilots Association, International v. Midwest Express Airlines, Inc.*, 279 F.3d 553 (7th Cir.2002), as support for their position that the effect of the Indication of Interest, including the issue of whether it gave new life to the arbitration provision of the Employment Agreement, is one for the arbitrator. We believe that *Air Line Pilots Association* is distinguishable on its facts.

*Air Line Pilots Association* involved two agreements: The first was a last-chance agreement that did not contain an arbitration clause; the second was a collective bargaining agreement that did. The collective bargaining agreement provided that it " 'shall supersede and take precedence over all agreements, supplemental agreements, amendments and similar related documents executed between [Midwest] and [ALPA] prior to the signing of this Agreement' " and that " 'disputes between any employee covered by this Agreement and the Company growing out of grievances or out of interpretation or application of any of the terms of this Agreement' " shall be submitted to arbitration. *Id.* at 555

(brackets in original). Later, the company terminated the pilot's employment pursuant to the last-chance agreement and without arbitration. The association sought to compel arbitration and, on appeal, we determined that the question of the arbitrability of the dispute was itself subject to arbitration. In doing so, we acknowledged that "[t]he question whether a dispute is arbitrable is usually for the court." *Id.* However, "when an arbitration clause is so broadly worded that it encompasses disputes over the scope or validity of the contract in which it is embedded, issues of the contract's scope or validity are for the arbitrators." *Id.* at 556.

We believe the distinctions between *Air Line Pilots Association* and the present case are clear. In *Air Line Pilots Association*, the later-in-time agreement contained not only an integration clause, but a broad arbitration clause. Consequently, unlike in the present situation (or in *Rosenblum*), there was evidence in the later contract that the parties intended to replace all prior agreements with the collective bargaining agreement and also

### Conclusion

For the reasons stated above, we affirm the judgment of the district court.

AFFIRMED

to arbitrate all disputes concerning the interpretation or application of the agreement.